## PEOPLE v. MOST.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

**1. PUBLISHING ANARCHISTIC DOCTRINES—INCITING TO MURDER — CRIMINAL LIABILITY.**

Pen. Code, § 675, providing that a person who willfully and wrongfully commits any act which seriously endangers the public peace, for which no other punishment is expressly provided, shall be guilty of a misdemeanor, authorized the punishment of the editor of a small anarchistic paper, who published therein an article entitled "Murder vs. Murder," characterizing government as "nothing more than murder dominion," and calling on anarchists "to execute the judgment" by killing "through blood and iron and poison and dynamite" the heads of nations, etc.

**2. SAME—LIBERTY OF PRESS—CONSTITUTIONAL GUARANTY—EFFECT.**

Const. art. 1, § 8, providing that "every citizen may freely speak, write, and publish his sentiments upon all subjects, being responsible for the abuse of that right, and no law shall be passed to refrain or abridge the liberty of speech or the press," does not authorize a citizen to publish articles inciting others to murder, etc.

**3. SAME—REPUBLICATION—LIABILITY.**

The fact that defendant was not himself the original author of the publication, it having been first published 50 years before, and that he merely republished it, did not relieve him from criminal liability where he approved the sentiments contained in it, as, by stating at the beginning of the article, "As * * * said nearly 50 years ago (this is true even to-day)," etc.

Appeal from court of special sessions of city of New York.

John Most was convicted of a misdemeanor under Pen. Code, § 675 (see 73 N. Y. Supp. 220), and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Maurice Hillquit, for appellant.
Robert C. Taylor, for the People.

McLAUGHLIN, J. Section 675 of the Penal Code provides, among other things, that a person who willfully and wrongfully commits any act which seriously endangers the public peace, for which no other punishment is expressly provided, is guilty of a misdemeanor. The defendant was tried, convicted, and sentenced to be imprisoned in the penitentiary for the term of one year for a violation of this provision of that section. He published, in the city of New York, in the German language, a newspaper called The Freiheit, which had a total circulation of about 3,000,—not exclusively in the United States, but in Germany, Austria, Switzerland, and other European countries. In the issue of this paper of the 7th of September, 1901, appeared an article entitled "Murder

vs. Murder," and upon the theory that the publication of this article seriously endangered the public peace, and that no other punishment was expressly provided by the Penal Code, his conviction was obtained. It is unnecessary to set out at length in this opinion the article as published. It is sufficient to say that, if not expressly, it at least impliedly, advised the readers of the paper to commit the most serious crime known to the law, viz., murder. It characterized government as "nothing more than murder dominion," and called upon the adherents of anarchy—persons supposed to be in sympathy with the editor of the paper—"to execute the judgment" by killing "through blood and iron and poison and dynamite" the heads of nations. After designating the rulers of countries as despots, it proceeded to characterize them as follows:

"They are in human society what the tiger is among animals. To spare them is a crime. As despots permit themselves everything,—betrayal, poison, murder, etc.,—in the same way all this is to be employed against them. Yes, crime directed against them is not only right, but it is the duty of every one who has an opportunity to commit it, and it would be a glory to him if it was successful."

That the promulgation of such unnatural and outrageous doctrines in this state of civilization "seriously endangers" the public peace is a question which to us does not seem to admit of debate. Every civilized nation heretofore has existed, and hereafter must exist, if at all, by the enforcement of law. Its recognition and enforcement are the safeguards of the state. Indeed, upon it depends its existence. It is the bond which binds the people together, and upon which they must rely for protection both of their persons and property. It is the one thing which limits the rights of one to the line where the rights of another commence; which protects the weak against the strong, and insures to all equal rights. Without it, chaos reigns, and brute force becomes substituted for right. Therefore whoever openly or secretly advocates the resort to force, in opposition to the law of the state, for the accomplishment of any purpose or the righting of any wrong, either real or imaginary, seriously endangers the public peace, and thereby subjects himself, if no other punishment is expressly provided, to the liability of punishment for the commission of the crime specified in the section of the Penal Code referred to.

In this connection, however, it is said that the constitution of the state (section 8 of article 1) provides that "every citizen may freely speak, write and publish his sentiments upon all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or the press," and that, therefore, the defendant had a right to express himself in the manner in which he did. But the provision of the constitution referred to manifestly does not give to a citizen the right to murder, nor does it give him the right to advise the commission of that crime by others. What it does permit is liberty of action only to the extent that such liberty does not interfere with or deprive others of an equal right. In the eye of the law, each citizen has an equal right to live, to act, and to enjoy the benefits of the laws of the state

under which he lives. But no one has the right to use the privileges thus conferred in such a way as to injure his fellow citizens, and one who imagines that he has labors under a serious misconception not only of the true meaning of the constitutional provision referred to, but of his duty and obligations to his fellow citizens and to the state itself.

It is further urged that the defendant is not criminally liable for the publication of this article, because he was not the author of it; that it was first published nearly 50 years ago, and that all the defendant did was to republish it. A complete answer to this suggestion is that the defendant published and adopted it as his own. He approved of the sentiments expressed in it, and gave publicity to them. Thus, in the beginning of the article, it is stated: "As * * * said nearly fifty years ago (this is true even to-day)." And other expressions used indicate that the defendant intended not only that the application should be made and the sentiments advocated adopted, but that the same should be followed at the present time by the readers of the paper. It does not require argument to demonstrate that one who openly advocates the killing of a fellow being, independent of and without resort to the laws of the land, whether that fellow being live in our own land or another, seriously endangers the public peace, within the meaning of the section of the Penal Code referred to, and, no other punishment being expressly provided, is guilty of the crime therein specified. This the defendant did, for which he was justly convicted, and we see no reason for interfering with the judgment. The judgment, therefore, must be affirmed.

Judgment affirmed, with costs, on opinion of court below. All concur.