(85 App. Div. 125.)

## PEOPLE v. PIERCE.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. MUNICIPAL ORDINANCE—OBSTRUCTION OF STREET—POWER OF CITY TO PASS.

    A city charter authorizing the council to pass ordinances prohibiting the gathering of persons upon the public streets, and empowering the police to disperse such gatherings, and, upon refusal of the persons congregated to disperse, to make summary arrests, and to prosecute them as disorderly persons, warrants the enactment of an ordinance providing that it shall not be lawful for any person to collect a crowd in the streets, to the hindrance of free and unmolested travel.

2. SAME—AUTHORITY OF LEGISLATURE.

    The Legislature may empower a city council to pass an ordinance prohibiting the collection of crowds in the streets, to the hindrance of travel.

3. SAME—VIOLATION OF ORDINANCE—WHAT CONSTITUTES.

    An ordinance punished collecting a crowd in the streets, to the hindance of free and unmolested travel. Accused drew a crowd of from 50 to 70 people to hear him deliver a public speech. The street was about

65 feet wide. The crowd mostly collected at one side, leaving a passageway wide enough for a horse and carriage on the other. *Held*, that the evidence supported a finding of a violation of the ordinance.

Parker, P. J., dissenting.

Appeal from Montgomery County Court.

Clinton H. Pierce was convicted of violating a city ordinance, and from a judgment of the county court affirming the judgment of conviction he appeals. Affirmed.

The ordinance under which this prosecution was had was stipulated to have been duly published and entered, and to have been an ordinance of the city of Amsterdam upon the 28th day of September, 1901, and for several days prior thereto. It reads as follows:

"It shall not be lawful for any person or persons to make and countenance or assist in any noise or disturbance or improper diversions in the streets or alleys, or in any place in the city, or who shall collect in crowds to the annoyance and disturbance of citizens or to the hindrance of free and unmolested travel, or to lounge, loaf or idly stand upon any street or corner, lane or alley, or at or near any bridge, railroad crossing or depot, or in or about any entrance, hallway or passageway or vestibule of any church, hall, place of amusement, factory, store, office, bank or other public buildings, or upon any unenclosed premises adjacent to any street or sidewalk, unless by consent of the owner or occupant of any such premises which are not public.

"Sec. 2. Every person violating any provision of this ordinance shall be liable to a fine of five dollars for each offense."

The defendant was convicted of having violated that ordinance upon the 28th day of September, 1901, and was fined $5 upon such conviction. The county court affirmed the conviction, and from the order of affirmance this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Benjamin Matterson, for appellant.

Frank G. Kelsey (Louis G. Carpenter, of counsel), for the People.

SMITH, J. From the evidence it appears that upon the 28th day of September, 1901, the defendant was upon West Main street—one of the public streets of the city of Amsterdam—speaking in the public highway of the street. He had drawn a crowd around him of about, as the evidence shows, from 50 to 70 people. He was standing just north of the center of the street, and about 20 or 30 feet from the curb. The street was about 65 feet wide. The crowd was mostly collected upon the north side of the street, so there was a passageway still left for a horse and carriage upon the south side of the street. The defendant was first asked by a police officer if he had a permit, to which he refused to respond. The officer then requested the defendant to stop speaking, which the defendant refused to do, whereupon he was arrested.

Upon this appeal it is contended by defendant's counsel, first, that the city of Amsterdam had no authority to pass the ordinance in question; and, secondly, that the defendant was not guilty of a violation thereof. As to the authority of the city to pass the ordinance, there can be little doubt. The charter of the city authorizes the common council, among other things, to pass ordinances "to prohibit the gathering or assembling of persons upon the public streets of the said city," and to authorize the police to disperse such gatherings, and,

upon the refusal of persons so congregated to disperse, to make summary arrest, and to prosecute them as disorderly persons; and all such persons were declared to be disorderly persons. This provision of the charter of the city of Amsterdam would seem to give to the common council of said city full authority to pass the ordinance in question. That the Legislature might give such authority to the common council would also seem to be undoubted. In Davis v. Massachusetts, 167 U. S. 47, 17 Sup. Ct. 255, 41 L. Ed. 666, Justice White, in writing for the court, said:

"For the Legislature absolutely or conditionally to forbid public speaking in a highway or public park is no more an infringement of the right of a member of the public than for the owner of a private house to forbid it in his house. When no proprietary right interferes, the Legislature may end the right of the public to enter upon the public place by putting an end to the dedication to public uses. So it may take the less step of limiting the public use to certain purposes. * * * If the Legislature had power under the Constitution to pass a law in the form of the present ordinance, there is no doubt that it could authorize the city of Boston to pass the ordinance."

The more difficult question arises under the second contention of defendant's counsel, to wit, that he has not been shown to have been guilty of any act which constitutes a violation of the ordinance. While the wording of the ordinance is not strictly correct, there can be no ambiguity as to its meaning. A person is forbidden to collect a crowd in the streets, to the annoyance and disturbance of citizens, or to the "hindrance of free and unmolested travel." It cannot be necessary to show that some travelers who attempted to pass through the crowd were actually hindered thereby. They might well have passed from the street before reaching the crowd that was before them, in order to avoid collision with the crowd. Sixty or seventy people in a public highway 65 feet wide must constitute, to an extent, a hindrance to free and unmolested travel upon that highway. No person could drive a horse through a street thus conditioned, without greater care, even though a passage be left sufficiently wide for his horse to pass. The natural and necessary consequence of collecting a crowd in a highway is to limit the freedom of its use. But whether or not such a crowd, as a matter of law, can be said to be a hindrance to free and unmolested travel upon that street, it is at least a question of fact, which has been determined by a jury against the defendant, and upon, as I think, abundant evidence. The apparent purpose of the ordinance was to prohibit just such public meetings in the street, and the act of the defendant in collecting this crowd was, in my judgment, a clear violation of the prohibition of the ordinance, which rendered him liable to the penalty which he has been adjudged to pay. The judgment of conviction was, I think, clearly right, as was its affirmance by the county court.

Judgment of conviction affirmed.

CHASE, CHESTER, and HOUGHTON, JJ., concur.

PARKER, P. J. (dissenting). The ordinance for the violation of which this appellant was convicted, among other things, makes it unlawful for any person "who shall collect in crowds to the annoyance

and disturbance of citizens, or to the hindrance of free and unmolested
travel." Such is the only part of the ordinance at all applicable to the
appellant's case, and I construe it to mean that it shall be unlawful
for any person to be one of such a crowd. It is not merely the person
who collects such a crowd together, that the ordinance is directed
against, but any one who becomes a part of such a crowd. In my
judgment, the facts of this case do not show a violation by the defend-
ant of that ordinance, within any fair construction of its meaning and
purpose. The defendant was addressing a crowd of people in the pub-
lic highway. He was standing upon a box in such highway, and was
advocating the principles of the political party to which he belonged.
There is no claim that he used any language calculated to stir up a dis-
turbance there, and no disturbance did in fact exist. Some 50 or 60
people listened to his speech in an orderly manner. They occupied
the street, undoubtedly, but a passageway was left for a horse and
carriage on one side of the street. It does not appear that any one
was actually hindered or molested while attempting to pass. When
asked by the chief of police to desist from speaking, he refused, claim-
ing that he had the right to do so, and thereupon he was arrested. In
what way had he violated the provisions of the ordinance above
quoted? He was one of a crowd in the street, to be sure, but it was
an orderly crowd, and in no respect one that had collected "to the
annoyance and disturbance of the citizens." Concededly, a passage
was open, through which anyone could drive, and so it had not collect-
ed "to the hindrance of free and unmolested travel." It is claimed
that, if any one had driven through there, he would have had to slow
up and drive carefully, and so travel was hindered and molested; that
the traveler is entitled to the full width of the street; and that the nec-
essary result of a crowd collecting in the street is to limit the free-
dom of its use. Thus the violation claimed is reduced to this: That
the crowd, of which the defendant insisted upon being one, was not
an "annoyance or disturbance" to the citizens, but that it required any
one who would have to pass through it to drive slowly, and choose the
south, rather than the north, side of the street. Is such a trifling
delay and inconsiderable limitation of the use of the street a "hin-
drance" to its free and unmolested use, within the meaning of the
ordinance? It is manifest that such a construction would practically
interfere with many uses to which the streets are frequently put. A
band plays in the street or from a balcony, and 60 or 70 people, more
or less, stop to listen. Is each one liable to arrest? Or is the band
violating the ordinance? A crowd stands before the doors of a
theater, of a public hall, or of a church, waiting for them to open, and
the sidewalk is completely blocked. One desiring to pass must turn
away into the street, and thus free and unmolested travel is, to some
extent, limited. Does each member of such crowd violate the ordi-
nance? Such a construction is unreasonable and renders the or-
dinance an absurdity.

I do not dispute the power of the city to make the ordinance, but no
act should be deemed a violation of the provision above quoted that
has not worked a substantial hindrance to the use of the street, or
caused substantial and actual annoyance to the citizen. A crowd

should not be condemned as having violated that ordinance, that is quiet and orderly, and affects public travel no more than to require it to slow up or turn to one side in passing. The evidence does not show any violation of the ordinance by the defendant. The conclusion of the jury to that effect is clearly against the weight of evidence and unwarranted, and for that reason the judgment should be reversed.