N. Y. 13; People v. Goslin, 67 App. Div. 16; s. c. 16 N. Y. Crim. R 255; affirmed 171 N. Y. 627 no opin.

A different question, however, arises where there is more than one good count in the indictment, and where the jury has found a general verdict. In such a case, the courts have pointed out that it is impossible to tell upon which one of the counts the jury convicted the defendant, and that it is possible that they may have convicted the defendant upon the particular count as to which the evidence is insufficient. In such cases, a reversal follows. See upon this point People v. Van Zile, 143 N. Y. 368; 9 N. Y. Crim. R. 330; People v. Sullivan, 173 N. Y. 122; 17 N. Y. Crim. R. 180.

# Court of Appeals.

June, 1904.

# Supreme Court, Appellate Division, First Department.

January, 1904.

## THE PEOPLE v. DAVID WEILER.

179 N. Y. 46.

1. CRIMES—WHEN "SHADOWING" BY A PRIVATE DETECTIVE IS NOT AN "OFFENSIVE OR DISORDERLY ACT" WITHIN MEANING OF PENAL CODE, § 675.

Where a private detective, employed by a detective agency duly licensed under the statute (L. 1898, ch. 422), and acting under instructions from his employer, "shadowed" a person by fol-

lowing him at a distance wherever he went on a public street, and by watching, at a distance, his house, office and other places where he went, in order to keep informed of all his movements, so that a process of subpœna could be served upon him at any moment if so required, such detective is not guilty of committing " any offensive or disorderly act" constituting a crime within the meaning of section 675 of the Penal Code, where he never spoke to or came into personal contact with the complainant, and so conducted himself that the complainant did not know that he was being "shadowed" until so informed by others.

Reversing 89 App. Div. 611.

Appeal from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered January 25, 1904, which affirmed a judgment of the Court of Special Sessions, First Division, of the City of New York, convicting the defendant of a violation of section 675 of the Penal Code.

The appeal came on for argument at the Appellate Division upon December 8th, 1903. The appeal in the similar case of People v, St. Clair was argued together with it. (For the disposition of the St. Clair case see Note appended to this case.)

Subsequently, the judgment of conviction was affirmed, without opinion; McLaughlin and Laughlin, JJ., dissenting. (89 App. Div., 611). The dissenting opinion is as follows :

McLAUGHLIN, J., (dissenting):

The defendant appeals from a judgment convicting him of a violation of section 675 of the Penal Code, for which he was sentenced to pay a fine of fifty dollars or, in default

thereof, stand committed not exceeding ten days. The judgment appealed from is about to be affirmed, and I am unable to agree with a majority of the court for the following reasons: The specific charge made in the complaint upon which the defendant was tried and convicted, is, that he, on the 27th day of March, 1903, followed the complainant from place to place in the public streets and at his place of business and other places, and thereby annoyed and interfered with his peace and comfort, in violation of section 675 of the Penal Code. There is substantially no dispute as to the facts. A criminal proceeding was pending before one of the magistrates of the city of New York, and the complainant Braker was desired as a witness. For the purpose of locating him, to the end that a eubpoena might be promptly served upon him when his presence was desired as such witness, a detective agency, duly licensed under Chapter 422, of the Laws of 1898, as amended, was employed to keep track of him. This agency had in its employ, among others, the defendant; and he was detailed to watch Braker for the purpose above stated, which he did from the 23rd to the 27th of March, when the subpœna was served. The method employed by the defendant to keep track of Braker was to follow him whenever he went upon the street, at a distance of from sixty to two hundred feet, and watch from a like distance his house, office and the other places to which he went, the purpose being to keep Braker in ignorance of the fact that he was watched. And so successfully did the defendant accomplish the purpose that Braker only discovered he was being shadowed at or immediately preceding the time the subpœna was served, and then only because he was so informed by others. At no time did the defendant speak to him, annoy or disturb him in any way, except in so far as he was disturbed in his peace of mind when informed that he was being shadowed.

To hold that such facts make the defendant guilty of a

crime, within the provisions of the section of the Penal Code referred to, seems to me preposterous. The only portion of the section of the Penal Code which by any possibility can be held to apply to such facts is the provision that "any person who shall by any offensive or disorderly act *
* * annoy or interfere with any person * * * in any place * * * shall be deemed guilty of a misdemeanor."

The parties interested in the criminal proceeding had a right to produce witnesses in favor of their respective contentions. No one, I believe, would seriously contest this proposition; and if they had the right to produce witnesses, then it necessarily follows that they had the right to keep track of persons to the end that a subpœna might be served when such persons were desired as witnesses. It might annoy the person desired as a witness to have a subpœna served upon him; and it likewise might annoy him to have his movements watched so that such subpœna could be served upon him; but such annoyance does not make the act of the process server or the one keeping track of him either offensive or disorderly within the meaning of the statute. One has no absolute right to the use of the public streets without being looked upon or his movements noted, nor has he the right to use the streets without being followed by another out of pleasure, curiosity, or for other purposes, so long as the act of the person following is not offensive or disorderly. No such right of privacy exists. (Roberson v. Rochester Folding Box Co., 171 N. Y., 538) An offensive or disorderly act within the meaning of the section of the Penal Code referred to is one which in some way tends to a disturbance of the peace, as that crime is known to and determined by the common law. Here the acts of the defendant in no way tended to a disturbance of the peace. In fact, the complainant was not even annoyed until some one told him he was being shadowed. It is conceded, or if

not, it must be, that the defendant's acts were not disorderly unless they annoyed the complainant. If this be true, then whether the acts of the defendant constituted a crime necessarily depended entirely upon the operation of Braker's mind; and I do not believe that the Legislature ever intended that the criminality of an act should depend upon the operation of a person's mind, which is incapable of being proved with any degree of accuracy, or disproved by any method known to the law. In other words, if the contention of the People be correct, the acts were not criminal unless known to Braker; but if known to him and they annoyed him, they thereupon became criminal acts. I can hardly conceive of a reasoning more fallacious or a rule more dangerous to personal liberty. That the Legislature never intended that such acts should constitute a crime seems to me clear, not only from the wording of the section of the Penal Code itself, but from the statutes which permit detective agencies upon the payment of a fee to do business. (Laws of 1898, Chap. 422, as amd. by Laws of 1901, Chap. 362.)

It cannot be possible that the Legislature, in enacting the statutes which permit the existence of detective agencies on the giving of a bond and the payment of a license fee, intended to authorize the commission of a crime; and it is equally clear that it did not intend to exact a fee for a license from one whose employees could not pursue the business for which it was licensed. To hold, under the facts set out in this record, that the defendant is guilty of a crime for which he is punishable under the section of the Penal Code hereinbefore cited, is to hamper the administration of justice and prevent in no small degree the conviction of criminals who have violated, and the detection of those who are about to violate the law.

The complaint did not state and the evidence did not establish that the defendant had committed any crime, and

he should have been discharged. For the foregoing reasons, hastily and briefly given, I think the judgment appealed from should be reversed and the defendant discharged.

Subsequently the appeal was brought on before the Court of Appeals, and was argued upon May 16, 1904. Upon June 17, 1904, the Court of Appeals reversed the conviction and directed the discharge of the defendant in the following opinion:

David Welch for appellant. The complaint does not set forth any crime. (10 Ency. Pl. & Pr. 473; People v. Pillion, 78 Hun, 74; People v. Gregg, 59 Hun, 107.)

William Travers Jerome, District Attorney (Howard S. Gans of counsel), for respondent. A detective who keeps a person under surveillance on the public street must be able to prove a public necessity for the surveillance in order to avoid criminal responsibility. (Penal Code, § 675,)

O'BRIEN, J.

The defendant was convicted of a misdemeanor in the Court of Special Sessions of the city of New York by the three justices of that court, without a jury. The judgment has been affirmed at the Appellate Division of the Supreme Court and the defendant has appealed to this court.

The conviction and judgment rest upon the provisions of section 675 of the Penal Code, which, so far as applicable, read as follows: "Any person who shall by any offensive or disorderly act * * * annoy or interfere with any person, * * * in any place, * * * shall be deemed guilty of a misdemeanor." The charge upon which the

defendant was tried and convicted is stated in the record substantially as follows : That the defendant violated the provisions of section 675 of the Penal Code ''in that said defendant, by continually following this deponent around from place to place in the public street, and at his place of business from time to time, and other public places where deponent had occasion to go, did commit an act offensive in its nature and did then and there annoy and interfere with the peace and comfort of deponent.''

The proof at the trial disclosed the fact that the defendant was a private detective, employed by a detective agency duly licensed under the provisions of chapter 422 of the Laws of 1898 and acting under the instructions of his employer he ''shadowed'' the complainant for four or five days, commencing March 23d, 1903, and ending March 27th, on which last day the defendant was arrested. It seems that in a certain criminal investigation then pending it was assumed that the complainant might be required as a witness and the purpose of employing the defendant, or the agency in whose service he was then employed, was to keep the complainant continually in view to the end that process of subpœna might be served upon him at any moment as the necessity of the case might require. This was the sole purpose of the defendant's conduct and what he did and all he did was to follow the complainant at some distance varying from sixty to two hundred feet wherever he went on the public street, watching from a like distance the complainant's house, office and other places where he went in order to keep informed of all his movements. The defendant so conducted himself as to carry out his purpose without the knowledge of the complainant. The defendant did not speak to the complainant and never came into personal contact with him, and, except in so far as the act of following him constituted an offense, he did nothing at all that was other than respectful. It is said that when the complainant

discovered the fact that he was being shadowed and that the fact was known to others he was greatly annoyed and refrained from visiting people whom he otherwise would have visited for business or social purposes.

The defendant's vocation or calling as a private detective is one that is recognized and regulated by law, and the question is whether anything was charged or proved against him that amounts to a crime. He was sentenced to pay a fine of fifty dollars, and, in default of payment, to imprisonment in the city prison for ten days. In pronouncing the judgment the learned court said: "In view of the fact that it is the first case of the kind that the Special Sessions has had, we will make the fine a light one. What we are going to do now must not be taken as a criterion of what we shall do hereafter in cases that may arise."

The question is whether the defendant was guilty "of any offensive or disorderly act" within the meaning of the statute. We think that no such act was charged and that no proof whatever was given of any act of that character, and hence the defendant's feelings of annoyance on being informed that he had been shadowed could not constitute a basis for the judgment. There are a great many things that may annoy the individual in his contact with modern society, but it does not follow that they are for that reason criminal or any evidence of crime.

It is impossible to see wherein the defendant committed any offensive or disorderly act or was guilty of anything wrong. He never got nearer than sixty feet to the complainant. He did not touch him or speak to him, or even look into his face. Indeed, so inoffensive was the defendant that the complainant was not aware that he was being shadowed until so informed by others, and, except for this information, it is quite likely that he would have remained in ignorance of the fact that he was under the eye of a detective.

The judgment should be reversed and the defendant discharged.

PARKER, Ch. J., MARTIN, CULLEN and WERNER, JJ.,' concur; GRAY and HAIGHT JJ., absent.

Judgment of conviction reversed.


NOTE UPON THE WEILER AND ST. CLAIR CASES,

AND UPON § 675 PENAL CODE.


The Weiler case (supra) went up in connection with another similar case, People v. St. Clair.

Both cases originated in the Court of Special Sessions, First Division, of the City of New York.

For the opinion in the St. Clair case, see People v. St. Clair, 90 App. Div., 239; s. c. 18 N. Y. Crim. 67.

The St. Clair case was also carried up to the Court of Appeals, and was reversed upon the authority of the Weiler case (supra). No opinion was handed down, except the following memorandum:

"Judgment of conviction reversed and defendant discharged on the authority of People v. Weiler (179 N. Y., 46).

Concur: Cullen, Ch. J., O'Brien, Martin, Vann and Werner, JJ. Absent: Gray and Haight, JJ."

People v. St. Clair, 179 N. Y., 578 memo.

Upon a comparison of the facts in the Weiler and St. Clair cases, a radical difference between them will be perceived. In the Weiler case the complainant Braker did not know that he was being shadowed. In the St. Clair case, on the contrary, the complainant La Roche did know that he was being shadowed; and was, in fact, greatly annoyed. For.a strong criticism of the reversal of the St. Clair conviction see an editorial entitled "Oppressive Dogging by Detectives" in the New York Law Journal, Nov. 16th 1904.

This editorial suggests that the reversal in the Weiler case would not have been incompatible with an affirmance in the St. Clair case, inasmuch as the facts of the St. Clair case showed a persistent and repeated shadowing, causing actual annoyance. The editorial suggests that the facts of each case ought to determine whether or not the act was within the scope of section 675.

Section 675, if literally construed, would make any act of annoyance in a public place a crime. The rulings in the Weiler and St. Clair cases apparently restrict the operation of the section to such acts of annoyance as will, in addition, tend to a breach of the peace. Otherwise, as McLaughlin, J. acutely pointed out, the criminality of the act would depend upon the operation of the mind of the person who had been annoyed, and that is "incapable of being proved with any degree of accuracy, or disproved by any method known to the law." The English judges have reached a similar conclusion. A bye-law of Stafford borough declared: —"no person shall wilfully annoy passengers in the streets." Wilful annoyance by the use of abusive language was proved; but the conviction was quashed upon the ground that the bye-law was neither certain nor reasonable. (Nash v. Finlay, 20 Cox c. c. 101, Nov. 1901.)

Section 675 is an obvious catch-all, and vague to the last degree. But few cases under it have found their way into the reports. We note such as we have found.

The chief case is the prosecution of Herr Most, the anarchist. It was held that his invitation to murder those in authority "seriously endangered the public peace." For the case in its various stages see : at the Special Sessions, People v. Most, 36 Misc., 139; s. c. 16 N. Y. Crim. 105; for the affirmance at the Appellate Division, 71 App. Div. 160; s. c. 16 N. Y. Crim. 392; for the subsequent affirmance by the Court of Appeals, 171 N. Y. 423; s. c. 16 N. Y. Crim. 555.

The tendency to limit the generality of the section is shown by the following case.

During a trial, one of the lawyers characterized a witness as follows .—"See that woman over there, look at the size

of her, she has in her belly an incubator for the purpose of hatching out frauds like that little scapegrace, her son." [Facts taken from the printed case]. He was subsequently tried and convicted of a violation of section 675. On appeal, the conviction was reversed, and the following memorandum was handed down :—"Judgment reversed upon the ground that the language alleged to have been spoken and the occasion upon which it was uttered do not bring the case within the statute, but that the offense was one which the Court was competent to deal with as a contempt. All concurred." (People v. Compton, 6 App. Div. 610).

In another case, a man was suspected of an attempt to blow up a building in New York city. The undisputed evidence showed that he had dynamite on his person, with detonating fuses attached, so that an immediate explosion would have attended a slight shock or blow. There was evidence that it was not usual to attach the fuses until the dynamite was about to be exploded. There was also other evidence of suspicious conduct. The magistrate held the man for trial for violating Penal Code § 385 (nuisance); and also for violating § 675. Upon habeas corpus, the writ was dismissed, and the court held that the evidence before the magistrate was enough to justify holding the defendant either under §385 (nuisance), or upon the ground that his acts "seriously endangered the public peace." (§675) (People v. Curran, N. Y. Law Journal, August 17th, 1899.)

N. B. The situation presented by the Curran case received the attention of the Legislature at its next session. Penal Code § 389 was amended so as to cover the case (Penal Code § 389 as amended by L. 1900 chap. 486.)

In a recent case a political meeting in the city of Amsterdam led to much disorder and threatened riot. The speakers were convicted under section 675. Held, proper. (People v. Wallace, 85 App. Div. 170; s. c. 17 N. Y. Crim. R. 432.)

Another case, the Pierce case, should be read in connection with this Wallace case. The episode was of a similar character occurring in the same city and at about the same time. The speaker, was however, prosecuted under a local

ordinance which prohibited disturbances in the streets to the annoyance of citizens and the hindrance of free and unmolested travel. Held, that the conviction was proper. (People v. Pierce, 85 App. Div. 125).

These public-meeting cases illustrate the familiar doctrine that a man is presumed to intend the natural consequences of his acts, even though he may be innocent of any intent, himself, to disturb the peace.

In a case, which arose in Liverpool, a fanatic carried on a crusade against the Romanists by preaching in the streets, using language and gestures calculated to insult and annoy them. He did not, himself, commit any breach of the peace, nor incite his own supporters to do so; but his opponents created much disturbance which required the intervention of the police. He was bound over to keep the place. In the K. B. Div., to which the matter was taken, it was argued that he had committed no criminal act; but the judge held that his acts were directly calculated to effect a breach of the peace, and that the magistrate had acted rightly in putting him under bonds (Wise v. Dunning, 20 Cox C. C. 121, Nov. 1901.)

This decision at least to some extent, discredits the earlier Salvation Army case, where the Q. B. Div. had held that members of the Salvation Army could not be prosecuted for unlawful assembly because tumults and riots ensued whenever they paraded, they themselves entertaining no intent to induce a breach of the peace. (Beatty v. Gillbanks, 15 Cox C. C. 138, June, 1882). It follows and approves the Irish anti-rent agitation cases (Reg. v. Justices of Cork, 15 Cox C. C. 78 and 149.) R. C. T.