The People of the State of New York ex rel. Thomas F. Doyle et al., Appellants, *v.* George C. Atwell, Acting Chief of Police of the City of Mount Vernon, Respondent.

The People of the State of New York, Respondent.

Mount Vernon (city of) — public streets — city ordinance prohibiting public meetings on street without permit of mayor — constitutional law — ordinance prohibiting public meetings on streets not unconstitutional as abridging liberty of speech — when a valid exercise of police power regulating the use of public streets — habeas corpus — if mandate directing arrest of person disobeying such ordinance is within jurisdiction of court writ of habeas corpus must be dismissed.

1. The charter of the city of Mount Vernon, as amended (L. 1896, ch. 182, § 166, subds. 5, 60) provides that the common council shall have full power to prohibit the gathering or assembling of persons upon the public streets of said city, or congregating upon the corners of the streets thereof, and to make such general ordinances, by-laws and regulations not repugnant to the general laws of this state, as they shall deem expedient for the good government of the city. In pursuance of the power thus given the following ordinance was passed: " Section 21. The gathering or assembling of persons upon the public streets of the city, the holding of public meetings upon the public streets of the city, the congregating of persons in groups or crowds upon the public streets of the city, without special permit of the Mayor, to be granted in writing, under his hand and seal, is hereby prohibited." The relators were arrested by the police of the city while addressing a meeting in the public streets without a permit from the mayor, in violation of this ordinance. After their arrest they were taken before a magistrate, and pending trial each obtained a writ of habeas corpus. *Held*, that the legislature had the constitutional right to confer upon the common council of the city the power to enact ordinances regulating the use of public streets and the gathering or assembling of persons thereon; that the ordinance passed clearly came within the provisions of the charter and had the force and effect, within the corporate limits of the city, of a statute passed by the legislature itself, and is valid since it is a reasonable exercise of the police power over the public streets.

2. A contention that an ordinance prohibiting public speaking in the public streets abridges liberty of speech, and is, therefore, unconstitutional, is not sustained either by reason or authority.

3. A writ of habeas corpus cannot take the place or perform the functions of an appeal from a judgment of conviction. The court before which a person is brought under such writ simply inquires whether the court rendering the judgment had jurisdiction to do so. If that fact appears, and the mandate under which the defendant is held be regular upon its face, the writ must be dismissed. (*State of Connecticut* v. *Coleman*, 113 Atl. Rep. 385, overruled.)

*People ex rel. Doyle* v. *Atwell*, 197 App. Div. 225, affirmed.

(Argued October 3, 1921; decided November 22, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 3, 1921, which reversed an order of Special Term sustaining writs of habeas corpus and discharging the relator from custody.

*Arthur Garfield Hays* for appellants. The ordinance in question is unconstitutional. (N. Y. Const. art. 1, §§ 8, 9; Dillon on Mun. Corp. 935; *Slaughter House Cases*, 16 Wall. 36; *People* v. *Most*, 171 N. Y. 423; *Ulster Square Dealer*, 58 Misc. Rep. 325; *United States* v. *Cruikshank*, 92 U. S. 542; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Matter of Frazee*, 63 Mich. 396; *Chicago* v. *Trotter*, 136 Ill. 430; *Rich* v. *Naperville*, 42 Ill. App. 222; *State* v. *Dearing*, 84 Mo. 585; *Baltimore* v. *Radke*, 49 Md. 217.)

*Lee Parsons Davis, District Attorney* (*Emory R. Buckner, Elihu Root, Jr.,* and *Robert P. Patterson* of counsel), and *Frederick W. Clark, Corporation Counsel,* for respondents. The city of Mount Vernon had express authority from the state legislature to enact this ordinance. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459; *Griffin* v. *City of Gloversville*, 67 App. Div. 403; 6 Ruling Case Law, 244.) The

ordinance is constitutional, being a valid and reasonable exercise of the police power over the use of streets. It does not abridge the right of free speech or of assemblage. (*City of Buffalo* v. *Till*, 192 App. Div. 99; *People* v. *Pierce*, 85 App. Div. 125; *Commonwealth* v. *Abrahams*, 156 Mass. 57; *Commonwealth* v. *Davis*, 162 Mass. 510; *Davis* v. *Massachusetts*, 167 U. S. 43; *Fitts* v. *City of Atlanta*, 121 Ga. 567; *Love* v. *Judge of Recorder's Court*, 128 Mich. 545.) The fact that the mayor is given authority to grant a permit to hold public meetings does not render the ordinance unconstitutional. (*City of Brooklyn* v. *Breslin*, 57 N. Y. 591; *People ex rel. Larrabee* v. *Mulholland*, 82 N. Y. 324; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440; 199 U. S. 552; *Stern* v. *Met. L. Ins. Co.*, 169 App. Div. 217; 217 N. Y. 626.) The method of administering the ordinance does not render it unconstitutional, or make the acts of the appellants lawful. (*People ex rel. Lieberman* v. *Vandecarr*, 81 App. Div. 128; 175 N. Y. 440; 199 U. S. 552; *People ex rel. Nechamcus* v. *Warden of City Prison*, 144 N. Y. 529; *People* v. *Kaye*, 212 N. Y. 407, 417; *State* v. *Orr*, 68 Conn. 101; *People ex rel. Empire City Trotting Club* v. *State Racing Commission*, 190 N. Y. 31; *People ex rel. Lodes* v. *Department of Health*, 189 N. Y. 187; *People ex rel. Sprenger* v. *Department of Health*, 226 N. Y. 209; *People ex rel. Rota* v. *Baker*, 136 App. Div. 7; *People ex rel. Cosby* v. *Robinson*, 141 App. Div. 656; *People ex rel. Klinger* v. *Rand*, 92 Misc. Rep. 276.)

McLaughlin, J. About eight o'clock in the evening of November 2, 1920, the relators were arrested by the police of the city of Mount Vernon while addressing a meeting in the public streets of that city without a permit from the mayor, in violation of an ordinance enacted by the municipal authorities. After their arrest, they were taken before a magistrate, and pending trial each

obtained a writ of habeas corpus. Upon the petitions and returns thereto, hearings were had, which resulted in one order sustaining the writs, discharging the relators and reciting that the ordinance under which the arrests were made was unconstitutional and void. An appeal was taken to the Appellate Division where the order was unanimously reversed and the writs dismissed. The relators appeal to this court.

The charter of the city of Mount Vernon (Laws of 1892, chap. 182, section 166, subd. 5, as amended by Laws of 1896, chap. 692) contains the following provision: " The Common Council  *  *  *  shall have full power *  *  *  5. To prohibit the gathering or assembling of persons upon the public streets of said city, or congregating upon the corners of the streets thereof  *  *  *, and *  *  *  60. To make such general ordinances, by-laws and regulations not repugnant to the general laws of this state, as they shall deem expedient for the good government of the city."

In pursuance of the power thus given by the legislature to the common council of the city of Mount Vernon, the following ordinance was passed: " Section 21. The gathering or assembling of persons upon the public streets of the city, the holding of public meetings upon the public streets of the city, the congregating of persons in groups or crowds upon the public streets of the city, without special permit of the Mayor, to be granted in writing, under his hand and seal, is hereby prohibited. Any violation of the provisions of this section is declared to be a misdemeanor, punishable upon conviction by a fine of Twenty-five ($25) Dollars, or by imprisonment in the County Jail of Westchester County for twenty-five (25) days."

A violation of this ordinance by each of the relators is not denied. The sole question, therefore, to be determined upon this appeal is whether the ordinance be valid. The answer to the question turns upon whether

the provision in the charter were a proper exercise of legislative power, and if so, whether the common council had the legal right, under the charter, to pass the ordinance.

The legislature had the constitutional right to confer upon the common council of the city of Mount Vernon the power to enact ordinances regulating the use of public streets and the gathering or assembling of persons thereon. This power was expressly given. The ordinance passed clearly came within the provisions of the charter and had the force and effect, within the corporate limits of the city, of a statute passed by the legislature itself. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.) The ordinance passed in pursuance of the power thus conferred is valid, since it is a reasonable exercise of the police power over the public streets. It is not repugnant to the state or federal Constitution, since it does not abridge the right of free speech or assemblage. Public streets are primarily for public travel. They are dedicated to the public for that purpose. They are thoroughfares intended for the use of the public to enable persons to go from one place to another. All acts which tend to hinder public travel thereon may be forbidden and prohibited. Any obstruction on the streets, whether permanent or temporary, may be declared unlawful.

It is quite beside the question to assert that the acts forbidden may be lawful in themselves, and could not in a general way be prohibited. On the streets the exercise of such rights is subordinate to the public right of travel and may be regulated or prohibited. Public meetings and assemblages held on the streets tend to obstruct the streets and destroy in a measure the very purpose for which they have been dedicated. It is too well settled by judicial decisions in both the state and federal courts that a municipality may pass an ordinance making it unlawful to hold public meetings upon the

public streets without a permit therefor to require discussion. The right to pass such ordinance is a valid exercise of legislative power, properly delegated to the municipal authorities. (*Commonwealth* v. *Abraham*, 156 Mass. 57; *Commonwealth* v. *Davis*, 162 Mass. 510; affd., 167 U. S. 43; *Fitts* v. *City of Atlanta*, 121 Ga. 567; *Love* v. *Judge of Recorder's Court*, 128 Mich. 545; *People* v. *Pierce*, 85 App. Div. 125.)

The contention of the appellants that the ordinance prohibiting public speaking in the public streets abridges liberty of speech, and is, therefore, unconstitutional, is not sustained either by reason or authority. The answer to the contention is that the ordinance merely concerns the use of public streets and is not directed against or concerned with free speech generally. The people have many constitutional rights, the exercise of which on the public streets may be prohibited. While there is a constitutional right of free speech, there is no constitutional privilege to exercise this right on the public streets in the form of there holding a public meeting. The fallacy of the appellants' contention was pointed out by Mr. Justice HOLMES in *Commonwealth* v. *Davis* (*supra*). He said: " It assumes that the ordinance is directed against free speech generally,   *   *   *   whereas in fact it is directed toward the modes in which Boston Common may be used.   *   *   *   For the legislature absolutely or conditionally to forbid public speaking in a highway or public park is no more an infringement of the rights of a member of the public than for the owner of a private house to forbid it in his house. When no proprietary right interferes, the legislature may end the right of the public to enter upon the public place by putting an end to the dedication to public uses. So it may take the lesser step of limiting the public use to certain purposes."

The right to address a meeting upon the public streets of the city of Mount Vernon was prohibited by the

ordinance unless a permit therefor were obtained from the mayor. Each of the relators was attempting to address such a meeting without a permit from the mayor and against his refusal to grant one. The right to grant or withhold a permit carried with it the exercise of discretion in the discharge of a public duty. The mayor, in passing upon an application, had to take into consideration the public safety as well as the public convenience. This involved, among other things, the place where the proposed meeting was to be held, the congestion in the street at that point, and the possible disturbance which the meeting might occasion. Obviously, the mayor had to exercise his discretion in a fair and impartial manner, with a view to the proper regulation of traffic and public necessities. If he did not exercise this discretion fairly, or if he acted arbitrarily or capriciously, then the relators might obtain relief by applying to the courts. (*Matter of Ormsby* v. *Bell*, 218 N. Y. 212; *People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529; *People ex rel. Empire City Trotting Club* v. *State Racing Comm.*, 190 N. Y. 31.) They could not obtain such relief by taking the law into their own hands, defying the mayor and violating the ordinance. The statement of the mayor, in refusing to grant the permit to one of the relators, that he would grant no further permits for Socialists' meeting while mayor, is, under all the facts set forth in the petitions and returns thereto, quite immaterial to the determination of the question presented. There is nothing in the ordinance, either upon its face or so far as appears from a proper enforcement of it, that it was to apply to a particular party or particular class of persons; on the contrary, the object sought to be obtained necessarily applied to all persons alike.

A writ of habeas corpus cannot take the place or perform the functions of an appeal from a judgment of conviction. The court before which a person is brought under such writ simply inquires whether the court

rendering the judgment had jurisdiction to do so. If that fact appears, and the mandate under which the defendant is held be regular upon its face, the writ must be dismissed. (*People ex rel. Hubert* v. *Kaiser,* 206 N. Y. 46.) The magistrate before whom the relators were taken had jurisdiction to try them for a violation of the ordinance in question, and they are now legally in custody. The Appellate Division, therefore, properly held that the order of the Special Term was erroneous, reversed the same, dismissed the writs and remanded the relators.

In reaching this conclusion the authorities cited by the relators' counsel have not been overlooked. They are not in point, or are clearly distinguishable, with the exception of *State of Connecticut* v. *Coleman* (113 Atl. Rep. 385). That authority sustains his contention, but is not sustained by, or in harmony with, the decisions of the courts of this and other states, or the Supreme Court of the United States. (See cases cited, also *City of Brooklyn* v. *Breslin,* 57 N. Y. 591; *People ex rel. Larrabee* v. *Mulholland,* 82 N. Y. 324; *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473; *People ex rel. Lieberman* v. *Vandecarr,* 175 N. Y. 440; *Stern* v. *Metropolitan Life Ins. Co.,* 169 App. Div. 217; affd., 217 N. Y. 626.)

The order of the Appellate Division should, therefore, be affirmed.

CARDOZO, J. (concurring in result). I concur in the result of Judge MCLAUGHLIN's opinion. The ordinance is not unconstitutional (*Comm.* v. *Davis,* 162 Mass. 510; *Davis* v. *Mass.,* 167 U. S. 43). The wrong, if any, is in its administration (*People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529, 539). The mayor refused a permit, it is said, because the applicants were Socialists. If that is so, he was guilty of a grave abuse of power. Remedies there are for a victim of such oppression, but upon the record now before us habeas corpus is not one of them. The inquiry upon that writ is to be confined to the single

point of jurisdiction. So confining it, we find that the relators have been arraigned before a magistrate, who, in committing them to custody, has acted on a sworn information sufficient on its face. The information charged the holding of a public meeting without the permit prescribed by law. Jurisdiction was thus conferred to arrest and hold for trial, even if the assumption be permissible that arbitrary refusal of the permit, a fact, if it be one, unknown to the magistrate, would be matter of defense (*Biddinger* v. *Commissioner of Police, N. Y.*, 245 U. S. 128, 135). Habeas corpus tests the mandate under which prisoners are held. It is not a substitute for a trial to determine innocence or guilt (*Glasgow* v. *Moyer*, 225 U. S. 420; *Horner* v. *U. S.*, 143 U. S. 570).

Nothing to the contrary was held in *Yick Wo* v. *Hopkins* (118 U. S. 356). There the vice in the ordinance was not " the consequence of adventitious circumstances " (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48, 58). Its prohibitions had been cunningly framed to reach a single class. Discrimination was its very purpose. No process that was valid could ever be issued under it. That is not the situation here. Inequalities, if they have here developed, are the result, not of the fulfilment, but of the perversion of the mandate of the ordinance.

My vote is for affirmance.

Pound, J. (dissenting). The ordinance in question is not unconstitutional merely because it vests in the mayor the power to determine when he will grant or refuse a permit to speak in the public streets of Mt. Vernon. (*Davis* v. *Mass.*, 167 U. S. 43.) An alleged discrimination against street preachers of the Gospel was, however, in the leading case, negatived by the state court. (*Com.* v. *Davis*, 162 Mass. 510, 512.)

The question is whether the constitutionality of an ordinance may be determined by the manner in which

it is enforced.  On this point some expressions of this
court appear to be in conflict with decisions of the
Supreme Court of the United States.

It was said in *Yick Wo* v. *Hopkins* (118 U. S. 356,
373), holding void in habeas corpus proceedings an
ordinance to regulate the carrying on of public laundries
in San Francisco on the ground that its administration
was directed against the Chinese:  " The cases present
the ordinances in actual operation, and the facts shown
establish an administration directed so exclusively against
a particular class of persons as to warrant and require
the conclusion, that, whatever may have been the intent
of the ordinances as adopted, they are applied by the
public authorities charged with their administration, and
thus representing the state itself, with a mind so unequal
and oppressive as to amount to a practical denial by the
State of that equal protection of the laws which is
secured to the petitioners, as to all other persons, by the
broad and benign provisions of the Fourteenth Amend-
ment to the Constitution of the United States.  Though
the law itself be fair on its face and impartial in appear-
ance, yet, if it is applied and administered by public
authority with an evil eye and an unequal hand, so as
practically to make unjust and illegal discriminations
between persons in similar circumstances, material to
their rights, the denial of equal justice is still within
the prohibition of the Constitution."

The *Yick Wo* case was one of discrimination against
the Chinese; the case before us is one of discrimination
against the Socialists.  The California ordinance may
have been conceived in iniquity, while the Mt. Vernon
ordinance was enacted before it became customary to
adopt repressive measures against the Socialists, but if
the unconstitutional purpose is the test no distinction is
made between the enactment and the enforcement of an
ordinance which wears the outward garb of constitu-
tionality.  It is in neither case the proper use of arbitrary

power. · Again, in *People ex rel. Lieberman* v. *Vandecarr* (199 U. S. 552, 563), another habeas corpus case, the United States Supreme Court said: " There is nothing in the record to show that the action against him (relator) was arbitrary or oppressive and without a fair and reasonable exercise of that discretion which the law reposed in the board of health. We have, then, an ordinance which, as construed in the highest court of the State, authorizes the exercise of a legal discretion in the granting or withholding of permits to transact a business, which, unless controlled, may be highly dangerous to the health of the community, and no affirmative showing that the power has been exerted in so arbitrary and oppressive a manner as to deprive the appellant of his property or liberty without due process of law. In such cases it is the settled doctrine of this court that no Federal right is invaded, and no authority exists for declaring a law unconstitutional, duly passed by the legislative authority and approved by the highest court of the state."

Here a class, milk dealers, was properly regulated. No discrimination against the relator, *e. g.*, because he was a Democrat and the licensing authorities were Republicans, was indicated. The *Yick Wo* case was cited with approval as authority for the proposition: " There is no presumption that the power will be arbitrarily exercised, and when it is shown to be thus exercised against the individual, under sanction of state authority, this court has not hesitated to interfere for his protection, when the case has come ˙ before it in such manner as to authorize the interference of a Federal court." (p. 562.)

But this court has casually said in *People ex rel. Nechamcus* v. *Warden, etc.* (144 N. Y. 529, 539):· " Nor is the constitutionality of an act to be determined by the manner ·in ˙which its provisions may be carried out ˙by those upon whom devolves the duty of acting ˷as˹ ˷examiners (of applicants for plumbers' licenses). If they act unfairly or oppressively, as alleged by the relator· in˙ his petition,

that is conduct which may call for a remedy against the persons who compose the board; but it does not furnish ground for assailing the validity of the statute."

The right of free speech and right of assembly are not absolute and under the ordinance the mayor had the power, and it was his duty, to withhold permits for street meetings when he thought that such meetings would interfere with travel or create disorder. The ordinance properly construed did not authorize discrimination and was valid. But the people are not to be lawfully deprived of their free customs and privileges by the mere will of the magistrate. Street speaking is not forbidden to all, but only to those who have not received permission from the mayor. The presumption is that discretionary power will not be arbitrarily exercised but when it is so exercised the Supreme Court of the United States has not hesitated to hold that it will protect the individuals thus oppressed. (*Yick Wo* v. *Hopkins, supra; People ex rel. Lieberman* v. *Vandecarr, supra.*) " The Constitution is the supreme law; and statutes are written *and enforced* in obedience to its commands." (*Municipal Gas Co.* v. *Public Service Comm.*, 225 N. Y. 89, 96.)

The mayor, when applied to by relators for a permit to hold a street meeting, as such meetings had previously been held in Mt. Vernon, announced that he would grant no further permits for Socialist meetings and would arrest any public speakers conducting such a meeting. The action was unauthorized, arbitrary and oppressive. The record does not suggest that the permit was refused for any other reason than that the political sentiments of relators were distasteful to the mayor.

I am strongly of the opinion that the doctrine of *Yick Wo* v. *Hopkins* and *People ex rel. Lieberman* v. *Vandecarr* controls and that the ordinance must be held to be unreasonable and void when it becomes an instrument of discrimination against relators to deprive them of their liberty without due process of law (U. S. Const. 14th Amend.;

N. Y. Const. art. 1, § 6) and of their constitutional right of lawful assembly and freedom of speech. (N. Y. Const. art. 1, §§ 8, 9.) If such is the proper test, if the arrest was for a matter for which by law they were not punishable, habeas corpus was the relators' summary and effective remedy for arbitrary discrimination against them on account of their political principles and it was unnecessary for them to resort to mandamus or to other civil, criminal or political remedies in order to enforce their constitutional rights or to obtain redress. (*Ex parte Seibold*, 100 U. S. 371, 376; *People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53.)

It seems almost needless to suggest that a permit would not have protected relators against the consequences of any disorderly or otherwise illegal conduct indulged in or instigated by them, and that they were at all times answerable to the law for the abuse of the rights of free speech and public assembly which they endeavored to assert.

The order of the Appellate Division should be reversed and that of the Special Term discharging relators from custody affirmed.

HISCOCK, Ch. J., HOGAN, CRANE and ANDREWS, JJ., concur with MCLAUGHLIN, J.; CARDOZO, J., concurs in memorandum; POUND, J., reads dissenting opinion.

Order affirmed.