City of Milwaukee, Respondent, vs. Kassen and another, Appellants.

*December 13, 1930—January 13, 1931.*

*William F. Quick* of Milwaukee, for the appellants.

For the respondent there was a brief by *John M. Niven,* city attorney of Milwaukee, and *Robert J. Gunnis,* assistant city attorney, and oral argument by *Mr. Gunnis.*

WICKHEM, J. The ordinance which defendants are charged with violating reads as follows:

"Section 865. It is hereby made unlawful for any person, firm or corporation, or for any officer, member, agent, servant or employee of any firm or corporation to place, throw or leave any slops, dirty water or other liquid of offensive smell, or otherwise nauseous or unwholesome, or any dead carcass, carrion, meat, fish, entrails, manure or any rubbish, ashes, paper, dirt, stones, bricks, manure, tin cans, boxes, barrels or other substances whatsoever, *or to circulate or distribute any circular, handbills, cards, posters, dodgers, or other printed or advertising matter,* or to drain or pour, or to permit to drain or flow oil, kerosene, benzine, or other similar oil or oily substances or liquid, in or upon any sidewalk, street, alley, wharf, boat landing, dock or other public place, park or ground within the city of Milwaukee. Provided, however, that this section shall not apply to any garbage, manure, ash boxes or receptacles, which are built and maintained not less than twelve inches above the grade of the alley, nor more than three feet from the line of any lot or parcel of land abutting upon any alley in said city. Said boxes so built and maintained shall be waterproof, and shall at all times be kept securely covered except when depositing or removing the contents therefrom."

It is conceded by both parties to this appeal that the purpose of the ordinance is to prevent the littering of the streets with any of the materials mentioned in the ordinance. This court has recently construed this ordinance in *Mittleman v. Nash Sales, Inc.* 202 Wis. 577, 232 N. W. 527, the court saying:

"The object sought to be attained by the ordinance evidently is to prevent an unsightly, untidy, and offensive condition of the sidewalks."

It is further conceded that the ordinance in question is a valid enactment. It is, however, contended by the appellants that the nuisance intended to be abolished by the ordinance was the unrestrained distribution of commercial advertising upon the city streets, and that the ordinance should not be

construed to apply to circulars setting forth political and economic views and having no commercial objective. Appellants contend that if the words "other printed or advertising matter" be deemed to cover all printed matter, that newspapers would be within the prohibition, and that it is absurd to suppose that there was any intention to prohibit the circulation or distribution of newspapers on the streets.

To this we cannot agree. In the first place, if appellants' contention is sound, the words "other printed" become superfluous in the ordinance. Appellants cite the following from *Chicago & N. W. R. Co. v. Railroad Comm.* 162 Wis. 91, 155 N. W. 941:

"General words in a statute which follow words relating to a particular class or specific subject should be restricted to persons or subjects of the same genus or family to which the particular person or subject belongs."

This is a restatement of the doctrine of *noscitur a sociis*. Applied to the ordinance in question, it is our conclusion that the phrase "other printed or advertising matter" relates to and is limited by the words "circulars, handbills, cards, posters, dodgers," and that the intention is to forbid the general circulation of all printed or advertising matter in this form. It is the form of the matter distributed rather than its printed contents that is to govern, according to what seems to be the plain intention of the ordinance, for the reason that it is the type of material distributed which contributes to the litter of the streets, rather than its contents. Handbills, circulars, cards, posters, and dodgers constitute a well-defined class of printed matter, and when circulated and distributed upon the streets constitute a well-recognized source of public annoyance by the littering of the streets. This is not true of newspapers, nor is it true that commercial advertising in the form of a dodger or handbill is more likely to be thrown to the street and result in its being littered than handbills or dodgers containing political or economic propaganda.

It is contended by the appellants that if this interpretation be accepted, the ordinance in question is unconstitutional, in that it deprives citizens of their right of free speech. In our opinion this contention is not sound. The rule as stated in 12 Corp. Jur. p. 954, is as follows:

"The constitutional guaranty of free speech does not prevent the government from regulating the use of places wholly within its control. Thus a statute or ordinance which forbids the delivery of addresses in the public parks, or on the streets, or which forbids the free distribution of printed matter on the streets, constitutes a valid exercise of the police power."

In *In re Anderson,* 69 Neb. 686, 96 N. W. 149, the court said:

"The ordinance in question is manifestly a police regulation intended to further the public health and safety by preventing the accumulation of large quantities of waste paper upon the streets and alleys, which might occasion danger from fire, choke up and obstruct gutters and catch-basins, and keep the streets in an unclean and filthy condition. A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not invalid simply because it may affect incidentally the exercise of some right guaranteed by the constitution. In all matters within the police power some compromise between the exigencies of public health and safety and the free exercise of their rights by individuals must be reached. The test in such cases is whether the regulation in question is a *bona fide* exercise of the police power or an arbitrary and unreasonable interference with the rights of individuals under the guise of police regulation. The ordinance in question is clearly a valid police regulation. It has no reference to or connection with freedom of speech or of the press, and its plain purpose is, not to interfere with the publication of sentiments and opinions of individuals, but to promote the cleanliness and safety of the municipality."

Appellants cite *People v. Armstrong,* 73 Mich. 288, 41 N. W. 275. In this case the ordinance provided that "no person shall himself, or by another, . . . . circulate, distribute,

or give away circulars, handbills, or advertising cards of any description in or upon any of the public streets and alleys of said city." The court held this ordinance to be unreasonable and unwarranted, saying:

"What direction or restraint is required for the public good in the mere act of giving away an advertising card or handbill? This part of the ordinance is not aimed at the littering up of the streets or at the frightening of horses, but the offense is made complete in itself by the mere act of distributing or giving away these enumerated articles."

Appellants also cite *Chicago v. Schultz,* 341 Ill. 208, 173 N. E. 276. In this case the ordinance of the city of Chicago reads:

"It shall be unlawful for any person, firm, or corporation, whether a licensed bill-poster or sign painter or not, to distribute, hand out or scatter upon any street, avenue, alley, sidewalk or other public place in the city of Chicago, any circular, dodger, handbills, pamphlet, card, picture, or any advertising matter of any kind whatsoever, or to distribute handbills or other advertising matter at houses, stores or places of business, otherwise than by putting the same under doors or in letter-boxes connected with the houses, stores or places of business. . . ."

It was contended by the defendant that this was unreasonable and invalid; that if it was not, it must be construed to prohibit only commercial advertising matter. The court sustained the position of the defendant. It was held that the legislature had not expressly granted power to cities enabling them to prohibit the distribution of the material referred to in the ordinance; that if it had any such power it proceeded from its general police powers or its power to regulate streets, and the ordinance must be a reasonable regulation, tending in some degree toward the prevention of offenses or preservation of public health, morals, safety, or welfare. The court said:

"The ordinance in question seems to be directed against the distribution on the streets and sidewalks of advertising

matter of any kind. Its provisions are so broad and inclusive that they prohibit any person from handing another person his card or picture on any street, sidewalk, or other public place in the city of Chicago."

The court further held that the handing out of a circular, dodger, etc., is not of itself an offense. "If this ordinance should be upheld, every person who hands his card or picture to another while on a public street or sidewalk or in a public place within the city of Chicago will be subject to a fine." The court further held that the distribution of newspapers would also be prohibited, as they all contain advertising matter. The court cites *People v. Armstrong,* 73 Mich. 288, 41 N. W. 275, with approval.

It is of course evident that both of these cases go much further than appellants' contention, since in both cases the ordinances were held unreasonable and invalid. The fundamental proposition behind these two cases cannot be denied. The ordinance must be a reasonable exercise of the police power. The difference between the Illinois case and our view of this case is probably irreconcilable and proceeds from a difference in interpretation of the ordinance. As we construe the ordinance, it is designed to forbid not an isolated handing of a card or handbill, but the general circulation of handbills and other printed matter of the same character, which experience has shown is more frequently than not consigned to the public streets, rendering them unsightly, frightening horses, clogging sewers, and otherwise resulting in public inconvenience. In the Illinois case the court construed the ordinance as making it an offense to hand one's picture or card to another on the public highway. We cannot agree to this interpretation.

So far as the record in this case discloses, there is no charge that the ordinance is being enforced in an unreasonable or discriminatory manner. It is of course quite readily to be conceded that if the enforcement of this ordinance

were shown to have been directed at a class of persons for the purpose of suppressing the free expression of their views, rather than for the purpose of preventing the littering of the public streets, quite a different question would be presented. *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064.

*By the Court.*—Judgment affirmed.