THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of JOHN MULLALY, Complainant, v. MAX BANKS, Defendant.

City Magistrates' Court of New York, Borough of Manhattan, First District, July 20, 1938.

*William C. Chanler, Corporation Counsel [David I. Shivitz of counsel], for the complainant.*

*Andrew Byrne, for the defendant.*

ROTHENBERG, C. M.   Defendant is charged with a violation of section B36–90.0 of article 6 of title B of chapter 36 of the Administrative Code of the City of New York (Laws of 1937, chap. 929), relating to peddlers, in that he did unlawfully peddle booklets at Nassau and Fulton streets, in the city and county of New York, without having a peddler's license.   The article offered for sale was a pamphlet entitled " John L. Lewis Exposed."   The allegations of the complaint are not disputed, nor are the contents of the pamphlet in issue.   The sole question is as to the validity of the section referred to in so far as it applies to the sale of pamphlets on the streets, defendant having challenged its constitutionality.

Article 6 of title B of chapter 36 of the Administrative Code, which includes section B36–90.0 reads as follows:

" Peddlers

" § B36–89.0   Definitions; exemptions.— a.

" Definitions.   Any person hawking, peddling, vending or selling merchandise in the streets of the city shall be deemed to be a peddler, and shall be classified as follows: a peddler using a motor-driven vehicle; a peddler using a horse-drawn vehicle; a peddler using a pushcart; and a peddler carrying merchandise on his person.

" b. Exemptions.   This article shall be inapplicable to a person who (a) shall sell newspapers and periodicals, or who (b) owns or operates a farm in the city and who sells produce grown on such farm, in the streets.   Such farmer shall be entitled to a certificate of exemption hereunder upon application to the commissioner setting forth sufficient facts, under oath, to prove that he is such farmer.

" § B36–90.0   License required.— It shall be unlawful for any person to act as a peddler, without a license therefor, from the commissioner.

" § B36–91.0   License fees; term.— a.   The annual license fees payable by peddlers to the commissioner shall be, for each peddler:

" 1. Using a motor-driven vehicle...................... Ten dollars
" 2. Using a horse-drawn vehicle..................... Ten dollars
" 3. Using a pushcart.............................. Five dollars
" 4. Carrying merchandise on his person............. Two dollars

" b. All peddler licenses shall be issued annually, and shall expire on the thirtieth day of April next succeeding the date of issuance thereof.

" § B36–95.0   Violation.— Any person who violates the provisions of sections B36–89.0 through B36–93.0 of the code, upon conviction thereof, shall be fined not more than ten dollars, or imprisoned, not exceeding ten days, or both."

It is established law that the Legislature, under the valid exercise of the police power of the State, may enact legislation regulating the use of the streets. Police power is inherent in a government to protect itself and its citizens, and the Legislature may adopt reasonable laws to further the public health, safety, morals and the welfare of the People of the State, notwithstanding the First and Fourteenth Amendments to the Constitution of the United States and article I of the State Constitution. Similarly, ordinances adopted by a municipality designed to regulate the use of the streets have been held lawful. (*City of Buffalo* v. *Till,* 192 App. Div. 99; *People ex rel. Doyle* v. *Atwell,* 197 id. 225; affd., 232 N. Y. 96; *Davis* v. *Massachusetts,* 167 U. S. 43; *People ex rel. Rayland Realty Co.* v. *Fagan,* 194 App. Div. 185; affd., 230 N. Y. 653; *Thousand Islands Park Assn.* v. *Tucker,* 173 id. 203; *People* v. *Hovell,* 109 Misc. 510.)

The exception to the rule is that the statute or ordinance must not be arbitrary or unreasonable or unduly oppressive. While the exercise of the police power is not violative of the Constitution, it is held in leash by the Constitution. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with the fundamental rights of citizens guaranteed by the Constitution. The determination of what, in any specific instance, is a proper and reasonable exercise of the police power is within the province of the courts. (*Lawton* v. *Steele,* 152 U. S. 133.)

We come, then, to the consideration of the question whether the provisions of article 6 of title B of chapter 36 of the Administrative Code may be regarded as a reasonable exercise of the police power when attempted to be made applicable to a person selling a pamphlet on the public streets. The Supreme Court of the United States, in the recent case of *Lovell* v. *Griffin* (303 U. S. 444; 82 L. Ed. 660), decided in March, 1938, declared void, as contrary to and in violation of the First and the Fourteenth Amendments to the Constitution guaranteeing freedom of speech and liberty of the press, an ordinance enacted by the city of Griffin, State of Georgia, which prohibited the practice of " distributing, either by hand or otherwise, circulars, handbooks, advertising, or literature of any kind, whether said articles are being delivered free, or whether same are being sold, within the limits of the City of Griffin, without first obtaining written permission from the City Manager of the City of Griffin." In voiding that ordinance, the Supreme Court, through Chief Justice HUGHES, who spoke for a unanimous court, said: " The ordinance embraces ' literature ' in the widest sense. The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation ' either by hand or otherwise.' There is

thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the City Manager. We think that the ordinance is invalid on its face."

It will be noted that there is considerable difference between the New York and the city of Griffin ordinances. The former does not prohibit the *free* distribution of pamphlets or other literature on the streets. The restriction is against the sale on the streets of merchandise other than newspapers and periodicals without first obtaining a license from and paying to the commissioner of public markets a license fee. For the purposes of article 6 of the Administrative Code, pamphlets, not being within the exemptions mentioned, are classified as merchandise. Whether such a classification is proper it is not necessary now to decide.

Under the decisions hereinbefore cited relating to the regulation of the use of the public streets, it is doubtful whether article 6 of the Administrative Code may be considered as coming under the ban of the decision in the *Lovell* case. I am, however, of the opinion that article 6 of title B of chapter 36 of the Administrative Code of the City of New York, in so far as it is made applicable to the sale of pamphlets on the public streets, is invalid on other grounds.

Section B36–90.0 of said article 6 of the Administrative Code requires a peddler to secure a license from the commissioner of public markets and section B36–91.0 thereof requires that a fee be paid for such license according to the category set forth. Section B36–95.0 provides that any person violating sections B36–89.0 to B36–93.0 shall, upon conviction thereof, be fined not more than ten dollars or imprisoned not exceeding ten days, or both.

I hold it to be an infringement of the First and Fourteenth Amendments to the Constitution of the United States guaranteeing the liberty of the press to require the payment of a license fee for the privilege of selling a pamphlet on the public streets and to impose a penalty of fine and imprisonment for a violation of the sections mentioned. The vice of such a requirement becomes more apparent when thought of in connection with the exercise of the right of free speech. Clearly it would be repugnant to the constitutional guarantee of free speech if a citizen were required to pay a license fee for the right to address a public meeting on the streets, even though the requirement of a permit in and of itself may be considered reasonable as incident to proper street regulation. Since liberty of the press is co-equal with freedom of speech under the

Constitution of the United States, it is no less repugnant to constitutional guaranties to require a license fee to be paid for the right of selling a pamphlet on the streets, especially so in view of what the Supreme Court said in the *Lovell* case with regard to the importance of pamphlets and leaflets as weapons in the defense of liberty.

It is one thing to say that a municipal ordinance adopted in pursuance of the police power may lawfully require persons desiring to use the streets as peddlers or to address street meetings to secure a permit from the appropriate authority before doing so, and such procedure may be indispensable in effective supervision of the streets in the public interest, but it is quite a different matter to say that before the right of free speech or liberty of the press may be exercised by citizens on the streets, a license fee, which is tantamount to a tax, must be paid.

This subject, in its broad aspects, was dealt with by the Supreme Court of the United States in the case of *Grosjean* v. *American Press Co., Inc.* (297 U. S. 233). In an unanimous decision the court held unconstitutional a State license tax imposed on owners of newspapers for the privilege of selling or charging for advertising therein. The court reviewed the history of the struggle for the freedom of the press and concluded that the First and Fourteenth Amendments were aimed at any form of previous restraint upon printed publications or their circulation, including restraint by taxation. I believe the principle there enunciated is applicable to the case at bar. The *Grosjean* case was cited with approval in the *Lovell* case. In applying the doctrine laid down in the *Grosjean* case to the facts in the *Lovell* case, the chief justice said: " The ordinance cannot be saved because it relates to distribution and not to publication. ' Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.' (*Ex parte Jackson,* 96 U. S. 727, 733.) The license tax in *Grosjean* v. *American Press Co.* (297 U. S. 233) was held invalid because of its direct tendency to restrict circulation."

Following this reasoning, it is clear that the imposition of a license fee or tax as a prerequisite to the sale of pamphlets on the streets has a direct tendency to restrict circulation, notwithstanding the fact that said article 6 of the Administrative Code permits free distribution of literature on the public streets without restriction. Free circulation depends as much and, conceivably, more upon sale than upon free distribution, considering the cost involved in the free distribution of literature. Adequate circulation may only be rendered possible through sale defraying the cost of production. How effectively a license fee or tax may act as a curtailment upon sale, and, consequently, upon circulation, the Supreme Court in

the *Grosjean* case (*supra*) said becomes " plain enough when we consider that, if it were increased to a high degree, as it could be if valid (*Magnano Co.* v. *Hamilton*, 292 U. S. 40, 45), it well might result in destroying  *  *  *  circulation."

This view takes on added significance when considered in the light of what the Supreme Court said in the *Lovell* case: " Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by State action  *  *  *. The struggle for the freedom of the press was primarily directed against the power of the licensor.  *  *  *  The liberty of the press is not confined to newspapers and periodicals.  It necessarily embraces pamphlets and leaflets.  These indeed have been historic weapons in defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest.  The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.  What we have had recent occasion to say with respect to the vital importance of protecting this essential liberty from every sort of infringement need not be repeated.  (*Near* v. *Minnesota*, 283 U. S. 697; *Grosjean* v. *American Press Co.*, 297 id. 233; *DeJonge* v. *Oregon*, 299 id. 353.) "

The *Lovell* case and the decisions cited therein, as well as numerous decisions of the courts of our own State, evidence the zeal with which the judiciary of our country has prevented any action of government, whether Federal, State or municipal, that might result in restricting free and general discussion of public matters essential to an enlightened public opinion, and thus to preserve an untrammelled press as a vital source of public information.

In the case at bar our concern is, of course, not with the burden of the license fee or tax called for by said article 6, section B36–91.0, of the Administrative Code, but with the safeguarding of the liberty of the press in harmony with the letter and the spirit of the utterances and of the mandates of our courts that have kept inviolate a basic principle of freedom for which a long and historic battle has been waged.

Accordingly, sections B36–90.0, B36–91.0 and B36–95.0 of article 6 of title B of chapter 36 of the Administrative Code of the City of New York, in so far as the provisions thereof prohibit the sale of pamphlets on the public streets of the city of New York without first paying a license fee to the commissioner of public markets of the city of New York, are held to be void and unconstitutional as unreasonable and discriminatory and as an infringement of the First and Fourteenth Amendments to the Constitution of the United States.

The complaint is dismissed and defendant is discharged.