BISHOP, J.
 

 The provisions of the Municipal Code of the City of Los Angeles, which prohibit the distribution of band-bills to pedestrians on the sidewalks of the city, do not, under the authorities, so infringe any constitutional right that they may be held inoperative. The judgment that the defendant-appellant pay a fine of $25 for violating the ordinance is, therefore, to be affirmed.
 

 The provisions of the Municipal Code which are involved appear in sections 28.00 and 28.01. There we find that “No person shall distribute any hand-bill to or among pedestrians along or upon any street, sidewalk or park, or to passengers on any street car, or throw, place or attach any hand-bill in, to or upon any automobile or other vehicle” and by way of definition it is declared that “Hand-Bill shall mean any handbill, dodger, commercial advertising circular, folder, booklet, letter, card, pamphlet, sheet, poster, sticker, banner, notice or other written, printed or painted matter calculated to attract attention of the public.”
 

 It may at times be a close question of fact, whether a person is actually “distributing” cards, which the municipal code prohibits, or whether he is passing out a card or two as an isolated casual or occasional act, which under a proper interpretation of its provisions, the code does not prohibit.
 
 (Anderson
 
 v.
 
 State,
 
 (1903) 69 Neb. 686, 689 [96 N. W. 149, 150, 5 Ann. Cas. 421] ;
 
 Coughlin
 
 v.
 
 Sullivan,
 
 (1924) 100 N. J. L. 42 [126 Atl. 177];
 
 Milwaukee
 
 v.
 
 Kassen,
 
 (1931) 203 Wis. 383 [234 N. W. 352, 354].) In this case, however, it plainly appears that the defendant was engaged in the distribution of cards. He had in his possession over three hundred colored cards, three and a half by five and a half inches in size; some of these he had already given to pedestrians on the sidewalk adjacent to the Shrine Auditorium, and, it was stipulated, he was “proceeding to distribute” the rest to other persons on the sidewalk. Obviously, the defendant violated the provisions of the Municipal Code, as he was charged with doing, and the judgment imposing sentence
 
 *Supp. 750
 
 upon him must be affirmed unless in some way the state or federal Constitution is offended by those provisions.
 

 The Municipal Code’s endeavor to create a public offense is futile, it is claimed, because contrary to the right to speak and publish freely, safeguarded by article I, section 9, of our state Constitution, and by the Fourteenth Amendment to the federal Constitution. The language of the former is: “Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.” The Fourteenth Amendment does not in terms protect against an invasion of the right freely to speak and to publish, but in its fending against the deprivation of liberty without due process, the right is held to be fully guarded.
 
 (Lovell
 
 v.
 
 Griffin,
 
 (1938) 303 U. S. 444 [58 Sup. Ct. 666, 82 L. Ed. 949], and eases cited.)
 

 The right to speak and to publish freely is not an absolute one, free from all legislative control. “The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater, and causing a panic.”
 
 (Schenck
 
 v.
 
 United States,
 
 (1919) 249 U. S. 47 [39 Sup. Ct. 247, 63 L. Ed. 470, 473].) “That a state, in the exercise of its police power, may punish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime, or disturb the public peace, is not open to question.”
 
 (Gitlow
 
 v.
 
 New York,
 
 (1925) 268 U. S. 652 [45 Sup. Ct. 625, 69 L. Ed. 1138, 1146].) Reasonable restrictions may be placed upon the time and place of the exercise of the right of free expression, as well as upon its content. In spite of the uncompromising language of our Constitution, it was held in
 
 In re Thomas,
 
 (1909) 10 Cal. App. 375 [102 Pac. 19], that the city of Los Angeles could validly prohibit the making of a public speech in any public park or on any street, within a defined district. A similar ordinance of the city of Boston, prohibiting all public addresses, without a permit, in any of the public grounds of the city, was upheld by the supreme judicial court of Massachusetts in
 
 Commonwealth
 
 v.
 
 Davis,
 
 (1895) 162 Mass. 510 [39 N. E. 113, 44 Am. St. Rep. 389, 26 L. R. A. 712], the opinion being written by Mr. Justice Holmes, and it was thereafter held valid by the Supreme Court of the United States, in
 
 Davis
 
 v.
 
 Commonwealth,
 
 (1897) 167 U. S. 43 [17 Sup. Ct.
 
 *Supp. 751
 
 731, 42 L. Ed. 71]. The New York court of appeals held such a prohibitory ordinance to be constitutional in
 
 People
 
 v.
 
 Atwell,
 
 (1921) 232 N. Y. 96 [133 N. E. 364, 25 A. L. R. 107] (Mr. Justice Cardozo concurring specially) and again in
 
 People
 
 v.
 
 Smith,
 
 (1934) 263 N. Y. 255 [188 N. E. 745], Still other cases, in accord, are reviewed in
 
 Coughlin
 
 v.
 
 Chicago Park Dist.,
 
 (1936) 364 Ill. 90 [4 N. E. (2d) 1], itself reaching the same conclusion. While it may be said, as it was in the case of
 
 People
 
 v.
 
 Smith, supra,
 
 that an ordinance such as we have just been considering “is not aimed at free speech”, it is plain that it nevertheless hits it. An ordinance which declares that one may not speak within a defined district, to that extent abridges the right to speak freely. Although there is an abridgment, the ordinance may still be valid, if the abridgment is not the end sought by the ordinance, but is merely incidental to the operation of the means reasonably adopted to attain a lawful end. Such is the witness of the cases.
 

 We do not subscribe to the doctrine that the city council could prohibit the distribution of handbills on the city streets in the absence of any public interest to be served by the prohibition, just because the streets are “city” streets, under the council’s charge; we hold that no restraint may validly be placed by public authority upon the constitutional right of free expression, whether it be to speak, pen, or print, even upon the public streets, which is not justified by the evils which lack of restraint would bring about. We may not, however, substitute our judgment for the city council’s in determining how far, within the extreme limits of reason, the threatened evils require restrictions on the exercise of a constitutional right. It is only when we can say that clearly the line of reasonable debate has been passed that we have the right to declare invalid the deliberate act of the legislative body of the city.
 

 Looking at the code before us, we cannot say that the city council had no reasonable cause for prohibiting the distribution of handbills on the sidewalks of the city, or that the city council acted arbitrarily in determining that some measure other than, or short of, such prohibition would not meet the needs reasonably well. Experience teaches that the immediate result of the indiscriminate distribution of handbills
 
 *Supp. 752
 
 on public streets is the. littering of those streets. Curiosity and courtesy would induce most persons to take one of the cards offered by appellant; a glance, and lack of further interest, would release it' from the hand. Those who are charged by law with determining the public' policy which shall govern, may well have seen the problem as it was stated in
 
 Anderson
 
 v.
 
 State, supra,
 
 69 Neb. 686 [96 N. W. 149, 150, 5 Ann. Cas. 421], as quoted in
 
 City of Milwaukee
 
 v.
 
 Kassen,
 
 (1931) 203 Wis. 383 [234 N. W. 352, 353] : “The ordinance in question is manifestly a police regulation intended to further the public health and safety by preventing the accumulation of large quantities of waste paper upon the streets and alleys, which might occasion danger from fire, choke up and obstruct gutters and catch-basins, and keep the streets in an unclean and filthy condition.” The evil against which the code appears to have been directed is to be measured not merely by appellant’s three hundred cards, but by the flood which might reasonably be expected if the code ceased to operate as a dike.
 

 It has been argued that the remedy for littered streets is not to prohibit the distribution of handbills, but to enforce the laws against letting them fall on the street or sidewalk. But in order effectually to prevent the accomplishment of something regarded as an evil, it is often found best, by those who determine the public policy, to prohibit an act, innocent in itself, but which is in the chain of events leading to the evil. Of laws founded on this principle our federal Supreme Court stated in
 
 Purity Extract & T. Co.
 
 v.
 
 Lynch,
 
 (1912) 226 U. S. 192 [33 Sup. Ct. 44, 57 L. Ed. 184, 185] : “It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of government. (Cases cited.) With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. ’ ’
 

 Our conclusion that the individual’s exercise of his constitutional right of free expression may be curbed by forbidding
 
 *Supp. 753
 
 the distribution of handbills on public streets, finds support in the authorities. (See
 
 Anderson
 
 v.
 
 State, supra,
 
 (1903) 69 Neb. 686 [96 N. W. 149 [5 Ann. Cas. 421] ;
 
 City of Milwaukee
 
 v.
 
 Kassen, supra,
 
 203 Wis. 383 [234 N. W. 352];
 
 Almassi
 
 v.
 
 City of Newark,
 
 (1930) 8 N. J. Misc. R. 420), 150 Atl. 217;
 
 Commonwealth
 
 v.
 
 Kimball,
 
 (1938) (-Mass.-) [13 N. E. (2d) 18, 114 A. L. R. 1440].) In support of principles on which, in part, our conclusion is based, we find
 
 People
 
 v.
 
 St. John,
 
 (1930) 108 Cal. App. (Supp.) 779 [288 Pac. 53],
 
 Sieroty
 
 v.
 
 City of Huntington Park,
 
 (1931) 111 Cal. App. 377 [295 Pac. 564], and
 
 San Francisco Shopping News Co.
 
 v.
 
 City of South San Francisco,
 
 (1934) 69 Fed. (2d) 879
 
 (certiorari
 
 denied, 293 U. S. 606 [55 Sup. Ct. 122, 79 L. Ed. 697].) There are authorities not in harmony with our conclusion, as may be discovered in the notes in 22 A. L. R. 1484, and 114 A. L. R. 1446. In connection with some of these cases, those that are based in part on a strict construction of legislative grants of power to municipalities, this should be noted respecting the police power of California cities: within their boundaries they exercise “the entire police power of the state, subject only to the control of general laws”. (Sec. 11, art. XI, state Constitution;
 
 In re Maas,
 
 (1933) 219 Cal. 422, 425 [27 Pac. (2d) 373].)
 

 Appellant earnestly urges that
 
 Lovell
 
 v.
 
 Griffin, supra,
 
 303 U. S. 444 [58 Sup. Ct. 666, 82" L. Ed. 949], is an authority requiring us to reverse this judgment. But we find nothing in the decision in that case to cause us to doubt the correctness of our conclusion. The ordinance under consideration there differs from ours in a vital particular appearing in the Supreme Court’s characterization of it: “The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation ‘ either by hand or otherwise’. There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the City Manager.”
 

 
 *Supp. 754
 
 The distinction to which we refer is not, that under the Griffin city ordinance distribution of pamphlets would be possible were a permit obtained, while no permit is provided for under our ordinance. In effect the two ordinances are identical in this regard, for the Supreme Court looked upon the permit feature as a nullity; the ordinance with it, was measured as though it were without it. The circumstance that some of the ordinances prohibiting speaking in public parks and streets, permitted the speaking if a permit was obtained, was not made the basis of approving the ordinance in any of the cases we noted. The absence, in our ordinance, of any provision for a permit, neither strengthens it nor does it invalidate it.
 

 The distinction between the Griffin city ordinance and the Los Angeles code which is both vital and obvious, is that the former prohibited the distribution of handbills and cards anywhere in the city, while the latter prohibits their distribution only in a very limited number of places, which cannot be said to be wholly unconnected with public welfare. The Supreme Court did not indulge in
 
 obiter dictum;
 
 that is, it did not say that an ordinance such as ours would be valid or invalid. It did point out, however, that the ordinance which it determined denied due process, was distinguishable from an ordinance such as ours in the particular we have emphasized, and thus did not extend its disapproval to an ordinance guarding against the littering of streets, which our ordinance (code) does.
 

 Up to this point we have considered the validity of the provisions of the Municipal Code in question solely from the standpoint of the attack made upon them that they are destructive of the right freely to express one’s views. It may be, however, that the real constitutional right involved is that rescued from an ordinance such as ours by
 
 In re Thornburg,
 
 (1936) 55 Ohio App. 229 [9 N. E. (2d) 516], where it was held that as the right to engage in business is a property right, to prevent one from advertising his business, by passing out cards on the sidewalk, is to deprive one of. his property without due process. The cards which appellant was distributing bore this message:
 

 
 *Supp. 755
 
 “Back from . . .
 

 WAR-TORN SPAIN Captain
 

 HANS AMLIE Commander Lincoln Battalion Brother of Congressman Amlie JAY ALLEN
 

 War correspondent Expelled from Rebel Spain PEPI JUNEDA Famous Spanish Dancer PILAR ARCOS Spanish Actress and Singer Chairman, LILLIAN HELLMAN Screen writer and playright TRINITY AUDITORIUM 847 So. Grand Ave.
 

 March 21, —8:00 P. M.
 

 Admission......25c and 50c
 

 AUSPICES:
 

 FRIENDS LINCOLN BRIGADE 333 W. 2nd st. —Mi. 7926
 

 Mercury Printing Co.
 

 855 No. Western Ave.”
 

 Whatever traffic in ideas the Friends Lincoln Brigade may have planned for the meeting, the cards themselves seem to fall within the classification of commercial advertising rather than the expression of one’s views. But if this be so, our conclusion is not thereby ■ changed. We do not find the constitutional prohibition against deprivation of property without due process to be superior to that which protects one from being deprived of his liberty without due process; the latter is not, any more than the former, an absolute right; each may be abridged by a reasonable exercise of the police power for the public benefit. Indeed, if we had to choose, we should follow
 
 Coughlin
 
 v.
 
 Sullivan, supra,
 
 100 N. J. L. 42 [126 Atl. 177], in finding it easier to uphold an ordinance forbidding the distribution of commercial handbills than one prohibiting the distribution of handbills intended to express one’s views on questions of public concern.
 

 
 *Supp. 756
 
 For the foregoing reasons, we are of the opinion that the judgment of conviction should be, and it is, affirmed.
 

 Shaw, P. J., and Sehauer, J., concurred.