## CHRESTENSEN v. VALENTINE.

District Court, S. D. New York.
Aug. 26, 1940.

Winthrop, Stimson, Putnam & Roberts, of New York City, for plaintiff.

William C. Chanler, Corp. Counsel, of New York City, for defendant.

HULBERT, District Judge.

Plaintiff moves for an order enjoining, pendente lite, the defendant and members of the Police Department of New York City, acting by and under the direction of the defendant, from interfering with the distribution by plaintiff, or his agents, servants and employees, of handbills in the streets and on the sidewalks in the City of New York, including streets and sidewalks contiguous to and within Battery Park in the Borough of Manhattan, City of New York and from interfering with "sandwich men" employed by plaintiff on sidewalks adjacent to said park.

Jurisdiction is claimed to exist because this is a civil action to redress the deprivation, under color of state law, ordinance and regulation, of rights, privileges and immunities secured by the Constitution of the United States, and of rights secured by laws of the United States providing for equal rights of citizens of the United States and of all persons within the jurisdiction of the United States; that the amount in controversy exceeds $3,000, and that the suit arises under the Constitution and laws of the United States.

Plaintiff is a citizen of Florida, and the defendant is a citizen of New York.

Plaintiff owns and maintains, for the purpose of exhibition to the public at a fixed admission fee, a former U. S. Navy submarine (S–49).

When he brought this vessel to New York he sought a berth for it at the City-Owned Battery wharf, from which most pleasure vessels, operated for profit in our harbor, embark and discharge passengers. His application having been denied in accordance with the established policy of the municipality he then secured facilities at a State-Owned Barge Canal terminal, Pier 5 East River, claimed to be a much less desirable location, just above South Ferry.

In order to advise the public, attracted to the Battery by its accomodations for recreation and entertainment, and solicit patronage, plaintiff designed a circular or handbill which he intended to have distributed on the public thoroughfares and sidewalks in and adjacent to Battery Park, and submitted same to the New York City Police Department, and was informed that such practice would be a violation of the provisions of the New York Sanitary Code and the Health Department Rules relating specifically to parks.

Plaintiff then had printed on the reverse side of the circular or handbill, a protest against the action of the Dock Commissioner of the City of New York in refusing his application for docking facilities. The Police Commissioner has restrained its distribution.

The chief question presented for determination is whether the plaintiff's fundamental rights and liberties of freedom of speech and freedom of the press, protected by the First Amendment to the United States Constitution from infringement by Congress, and extended by the Fourteenth Amendment against invasion by State action, have been abridged.

It is conceded by the defendant that the distribution of a handbill, except on public park property, if confined to the criticism of the action of the Commissioner of Docks, would be permissible on the streets without police molestation. But, he contends, in combination with commercial advertising it loses its privileged status.

Section 318 of the Sanitary Code of the City of New York reads as follows: "No person shall throw, cast or distribute or cause or permit to be thrown, cast or distributed, any handbill, circular, card, booklet, placard or other advertising matter whatsoever, in or upon any street or public place, or in a front yard or court yard,

or on any stoop, or in the vestibule or any hall of any building, or in a letterbox therein; provided that nothing herein contained shall be deemed to prohibit or otherwise regulate the delivery of any such matter by the United States postal service, or prohibit the distribution of sample copies of newspapers regularly sold by the copy or by annual subscription. This section is not intended to prevent the lawful distribution of anything other than commercial and business advertising matter."

Article II, Section 6, of the Park Regulations of the City of New York reads as follows: "No person shall post any bill, placard, notice or other paper upon any structure, tree, rock, article or thing within any park, or upon any park street, or paint or affix thereon, in any other way, any advertisement, notice or exhortation. No person shall distribute, hand out, deliver, place, cast about or leave about any bill, billboard, ticket, handbill, card, placard, circular, pamphlet or display any flag, banner, transparency, target, sign, placard or any matter for advertising purposes, or operate any musical instrument or drum within any park or upon any park street, or cause any noise to be made for advertising purposes or the purpose of attracting attention to any exhibition, performance, show or other purpose, within any park or upon any park street. The placing, or using for any other purpose than reading of newspapers, or other papers on the beaches or boardwalks, on the lawns or beaches of public parks is prohibited."

■ A public park has been defined by the New York Court of Appeals as "a piece of ground inclosed for purposes of pleasure, exercise, amusement or ornament." Perrin v. N. Y. C. R. R. Co., 36 N.Y. 120.

■ The public visit their parks to enjoy the beauties of nature, to rest, and sometimes to put aside their cares, or if to meditate upon them, to do so in solitude. However, counsel for the plaintiff has not pressed convincingly his application so far as the regulation pertaining to the Battery Park is concerned, and I find it to be without merit and dismiss it from further consideration.

■ Ordinarily the constitutionality of statutes is reserved to the appellate courts, and when the trial court undertakes to pass upon the question it must be satisfied of the unconstitutionality of the Act beyond a reasonable doubt before so deciding.

The United States Supreme Court in Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 667, 82 L.Ed. 949, held unconstitutional an ordinance of the City of Griffin, Georgia, which provided:

"Section 1. That the practice of distributing, either by hand or otherwise, circulars, handbooks, advertising, or literature of any kind, whether said articles are being delivered free, or whether same are being sold, within the limits of the City of Griffin, without first obtaining written permission from the City Manager of the City of Griffin, such practice shall be deemed a nuisance, and punishable as an offense against the City of Griffin.

"Section 2. The Chief of Police of the City of Griffin and the police force of the City of Griffin are hereby required and directed to suppress the same and to abate any nuisance as is described in the first section of this ordinance."

In delivering the opinion of the court, Mr. Chief Justice Hughes said (page 451 of 303 U.S., page 668 of 58 S.Ct., 82 L.Ed. 949):

"The ordinance is not limited to 'literature' that is obscene or offensive to public morals or that advocates unlawful conduct. There is no suggestion that the pamphlet and magazine distributed in the instant case were of that character. The ordinance embraces 'literature' in the widest sense.

"The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation 'either by hand or otherwise.' There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager.

"We think that the ordinance is invalid on its face."

Subsequently state courts in four different states upheld ordinances which prohibited the distribution of handbills, or of house-to-house solicitation, each attempting to distinguish the Lovell case, supra; in City of Milwaukee v. Snyder, 230 Wis. 131, 283 N.W. 301, upon the ground that

the ordinance was aimed at preventing the littering of the streets; in Com. of Massachusetts v. Nichols, 301 Mass. 584, 18 N.E.2d 166, because the ordinance applied to only a part of the City of Worcester in State (Town of Irvington, N. J.) v. Schneider, 121 N.J.L. 542, 3 A.2d 609, because the ordinance was aimed at canvassing or soliciting; and in People of California v. Kim Young, 33 Cal.App.2d Supp. 747, 85 P.2d 231, because the ordinance did not prohibit distribution of what the court characterized as "commercial advertising" in all parts of the City of Los Angeles.

All four of those cases were reversed and each ordinance held unconstitutional by the United States Supreme Court. Schneider v. State (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155.

No distinction was made in any of these cases between commercial and non-commercial circulars or handbills.

The defendant urges that Section 318 of the Sanitary Code is enforced against "commercial" handbills to avoid littering of the streets.

Is it less likely that the distribution of non-commercial handbills will not result in littering the streets?

It is said in 5 University Chicago Law Review 675, 676, (1938): "The value of such a distinction is open to doubt. What is news of general nature as compared with advertising matter? Is the announcement of a political meeting matter of general nature? A New Jersey court [Almassi v. City of Newark, 150 A. 217, 8 N.J.Misc. 420] held it was advertising matter only. In a recent Massachusetts decision [Commonwealth v. Kimball, 299 Mass. 353, 13 N.E.2d 18, 114 A.L.R. 1440] pamphlets advocating a labor union were held advertising matter. On the other hand, a Michigan court [People v. Armstrong, 73 Mich. 288, 41 N.W. 275, 2 L.R.A. 721, 16 Am.St.Rep. 578] held that an ordinance was not reasonable if it included in its prohibition the circulating of 'an invitation to a moral and Christian assembly of people gathered together for the public good.'"

In the final disposition of the four cases above referred to, Mr. Justice Roberts, writing for the court said, (308 U.S. page 162, 60 S.Ct. page 151, 84 L.Ed. 155): "The motive of the legislation under attack [the Los Angeles, Milwaukee, and the Worcester ordinances] is held by the courts below to be the prevention of littering of the streets and, although the alleged offenders were not charged with themselves scattering paper in the streets, their convictions were sustained upon the theory that distribution by them encouraged or resulted in such littering. We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets, as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets."

A city ordinance of the suggested character (merely prohibiting the casting of handbills into the street) has been upheld as reasonable and valid in City of Philadelphia v. Brabender, 201 Pa. 574, 51 A. 374, 58 A.L.R. 220.

People v. Taylor, 33 Cal.App.2d Supp. 760, 85 P.2d 978, 979, decided December 31, 1938, is quite in point with the case at bar: The defendants were charged with a violation of Ordinance 10731 of the City of San Diego and after pleas of not guilty but before trial the case was dismissed and the people appealed. Haines, Presiding Judge, said:

"We think that the judgment must be sustained. Though the case was not tried upon the facts there is in the record what the parties stipulate is a copy of the matter circulated. It is a mimeographed publication of a radical but not incendiary nature, mainly devoted to political discussion but containing certain advertising matter.
* * *

"We do not question the right of the Council to inhibit the defacing of property by affixing to it posters, circulars or notices, nor do we question the council's right to forbid the depositing upon sidewalks, streets or other public places, or for that matter the unauthorized depositing on private property of dodgers, notices, circulars or other matter having a tendency to create an accumulation of rubbish. Such inhibitions are manifestly proper uses of the police power and have often been so held. [Citing Cases]. It is true that a portion of the San Diego ordinance under

review is directed against that evil. This, however, is not the portion of the San Diego ordinance under which the charge before us is laid. What is charged is a mere personal distribution of advertising matter to pedestrians on a public street and to persons in another public place.

"There is no charge that such matter was forced upon persons not willing to receive the same or that there was anything in the distribution tending to disturb the peace or public order or to cause any littering of the streets or of any public place. The attempt to prohibit the mere handing of advertising matter to persons on the streets or in other public places has often been held to be an unlawful and unwarranted invasion of private rights and therefore to be beyond any legitimate exercise of the police power, and we are in accord with that view. [Citing Cases]".

Indeed, cases in our own state have come into step with the more modern trend of constitutional interpretation since 1938. People on Complaint of Mullaly v. Banks, City Magistrates Court of New York, Borough of Manhattan, First District, July 20, 1938, 168 Misc. 515, 6 N.Y.S.2d 41; People ex. rel. Gordon v. McDermott, Supreme Court, Albany County, 169 Misc. 743, 9 N.Y.S.2d 795. Compare People v. Armstrong, 73 Mich. 288, 41 N.W. 275, 2 L.R.A. 721, 16 Am.St.Rep. 578; City of Chicago v. Schultz, 341 Ill. 208, 173 N.E. 276; Ex parte Pierce, 127 Tex.Cr.R. 35, 75 S.W.2d 264.

It is argued on behalf of defendant that the plaintiff has sought to manufacture a case which, under the cloak of civil liberty, would "permit him to line his own pockets through the medium of unlawful advertising at the expense of the people of the City of New York," and it is urged that by reason of the absence of a deprivation of civil right this court is without jurisdiction under Section 24(14) of the Judicial Code, Section 41(14), Title 28 U.S. C., 28 U.S.C.A. § 41(14).

■■ The plaintiff claims loss of profits because he has been compelled to berth his vessel at a less favorable location. He may show the location to be less favorable, but it cannot be assumed that the Dock Commissioner acted from improper motives when he carried out an administrative policy. However, the plaintiff has been deprived of a civil right in distributing an informative circular concerning the location of his exhibit and soliciting patronage. The ordinance is clearly discriminatory against the business man while affording protection to persons, distributing non-commercial handbills, whose convictions and efforts might be subversive to the welfare of the government.

I hold Section 318 of the Sanitary Code of the City of New York to be invalid.

With respect to the "sandwich men", employees of the plaintiff, there has been a determination against the police commissioner in the case of Walters v. Valentine, 172 Misc. 264, 12 N.Y.S.2d 612, in the Supreme Court, New York County, Special Term, Part I, McCook, J., April 26, 1939.

Motion granted to extent thus indicated. Settle order on notice.