### SMITH v. ERVIN, Attorney General, et al.

Circuit Court, Hillsborough County.
March 12, 1952.

J. Kenneth Ballinger, Tallahassee, for plaintiff.

Richard W. Ervin, Attorney General, John A. Madigan, Jr., Assistant Attorney General, both of Tallahassee, J. Rex Farrior, State Attorney, V. R. Fisher, County Solicitor, both of Tampa, for defendants.

HENRY C. TILLMAN, Circuit Judge.

This case involves the constitutionality of a part of what has come to be known as the Election Code, which was enacted as chapter 26870, laws of Florida 1951, the codification of which is section 99.161 — which is a section dealing with contributions to candidates, expenditure of campaign funds, and the filing of reports in relation thereto. Subsections (4) (a) and (7) of section 99.161 are as follows:

(4) *Campaign treasurer in charge of funds; time limit.*—

(a) No contribution or expenditure of money or other thing of value, nor obligation therefor, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the State of Florida except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate. * * *

(7) *Written authorization of expenditure required.*—

No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn, or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper.

This statute provides a penalty amounting to a misdemeanor for violation of section 99.161 by an individual — which reads as follows, in section 104.27:

*Penalties for violation of section 99.161.*—

(1) Any person who knowingly violates the provisions of section 99.161 shall be deemed guilty of a misdemeanor and subject to a fine of not more than one thousand dollars or to imprisonment for not more than six months.

This case deals with the effect of this statute upon a radio station and the rights of one who runs a radio station. It should be noted at the outset that the rights of freedom of speech and the press, as applied to radio, are necessarily, and from the beginning, more restricted than they are in relation to newspapers.

In the case of National Broadcasting Co. v. U. S., 319 U. S. 190, 87 L. Ed. 1344, the Supreme Court held:

> Freedom of utterance is abridged to many who wish to use the limited facilities of radio. Unlike other modes of expression, radio inherently is not available to all. That is its unique characteristic and that is why, unlike other modes of expression, it is subject to governmental regulation. Becaue it cannot be used by all, some who wish to use it must be denied . . . The right of free speech does not include, however, the right to use the facilities of radio without a license . . .

While there is this distinction between the effect of this statute as applied to a radio station and the statute as applied to newspaper advertising, it seems to me that the principle involving the constitutionality of the statute as to radio and newspaper advertising is the same, and I have so treated them.

It is a serious thing to declare a statute of the legislature unconstitutional, and this has been thoroughly recognized in the decisions of our Court. The Supreme Court of Florida has held in the case of City of Jacksonville v. Bowden, 64 So. 769, and in numerous other cases unnecessary to cite at this point, as follows:

> The lawmaking power of the legislature of a State is subject only to the limitations provided in the State and Federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute, it is in positive conflict with some identified or designated provisions of constitutional law.

And again in the case of State v. Bryan, 39 So. 929, and Stewart v. DeLand-Lake Helen Special Road etc., 71 So. 42, our Court held that:

> The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are all matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly made to appear beyond a reasonable doubt that it is unconstitutional.

And in the case of Hunter v. Owens, 86 So. 839, our Supreme Court used this language:

> The wisdom, necessity, expediency, feasibility and probable success of a governmental statutory project are not subject to judicial review, where the statute is not clearly a violation or evasion of organic law and has substantial basis in a lawful public purpose within the scope of the police power.

In the Maxcy v. Mayo case, 139 So. 121, the Supreme Court announced this doctrine:

> When put to the choice by the practical necessities of the case, the Legislature may exercise its power to suppress an evil by prohibiting entirely a stated practice out of which that evil largely grows, even though by so doing, innocent acts may be forbidden and long established customs of the people thenceforth made unlawful.

With reference to this legislation, I do not see how any thinking man can doubt that the legislature was inspired to pass this statute because of the ever-increasing influence of money and self-serving segments in our system who were seeking through the power of money to rule in a way; and granting that there may be some curtailment in the right of free speech and in the right of free press or expression, the legislature was confronted with what it deemed, with good reason, to be a possible destruction of free elections when it passed this act.

Any one who has read the newspapers for the past decade has seen with alarm the ever-increasing expenditures in our elections; and as one of the results, the ever-increasing scandals in public life, and betrayals of the public trust by those who have been elected through the instrumentality of the use of money and the control of the mediums by which the people have been acquainted with men and issues.

So that while, so far as radio is concerned, I cannot see where the issue of free speech is involved at all — even if it is, the legislature was justified in invoking the police power to put a curb on this ever-growing evil.

Within the memory of most of us, a great many observers believe there have been at least three campaigns in the state of Florida where more than a million dollars was spent to elect somebody. The people who contribute in great sums do not do so from the altruistic motive of seeking to help the state. There might be some who have good motives; but most of them, either directly or indirectly, are spending their money so that they can profit by the success of some legislation or the influence

of some public official. It is impossible any more for a poor man to aspire to public office unless he is willing to obligate himself, either directly or indirectly, to these people who are engaged in buying influence and control. So that as between the two, if there be a conflict, the legislature wisely thought that even though there might be a slight infringement of free speech and freedom of the press, it were better to put a slight limitation on that than to continue the danger growing up to the system of free elections. A man would have to be blind indeed who would think that an election in Florida costing more than a million dollars would be a free election.

That being the case, whether one comes to the conclusion that the distinction between the radio and newspapers elimininates the radio from the idea of an absolute curtailment of free speech and therefore could not in any way affect the constitutionality of the act limiting the radio — or whether you want to admit that free speech is curtailed — it seems to me that the exigencies of the situation, which the courts have always placed in the power of the legislature to measure and meet, gave the legislature the right in the exercise of its police power to pass this law.

Without discussing the details, this law does not prohibit anyone from making a *speech* advocating the candidacy of a candidate. The only thing it does is require that any *contribution* shall be had upon the authorization of the candidate or his duly appointed agent and that it shall be reported by the candidate or his treasurer and become a part of the public reports.

Otherwise, how could the elector ever tell who was behind this candidate or that; and the legislature chose the only way by which contributions to campaigns could be policed and become the knowledge of any man who would take the trouble to go to the state agency where the reports are assembled. There would be little use in the balance of the act prohibiting contributions from race track owners, dog track owners, public utilities, and other interests considered undesirable proponents of a candidate in Florida — unless the legislature devised a way for the people to ascertain what persons or interests were supporting and putting up the money for a candidate.

What Justice Terrell said in the case of Pennekamp v. State (Fla.), 22 So. 2d 875, is more appropriate to radio than it is to the press, of which he wrote:

So when we speak of a free press, we think of gathering and disseminating news, the editorial page, or any discussion to promote truth and understanding. Unless it bears some relation to the promotion of truth and understanding, free press may not include the comics, sports, commercial advertisements, and other features that have become a part of the modern newspaper. A free press was never contemplated to be a subsidized press open solely to the stockholders or others for a price. In fact, a press with one eye on dividends and the other on hedges to truth and understanding is not a free press as contemplated by the Constitution. The hallmark of a free press is voluntary devotion to the common good; when other motives are dominant it usually ceases to be free and forfeits public confidence.

The act of the 1951 legislature in passing this Election Code is not the first example in this country of the attempts by legislative bodies to better the condition of their states, even at the expense of being charged with a violation of the rights of free speech and press. For examples, see the following: State v. Babst (Ohio), 135 N. E. 525; U. S. v. Newton, 20 D. C. 226; McAuliffe v. Mayor, etc. of City of New Bedford (Mass.), 29 N. E. 517; U. S. v. Painter's Local Union No. 481, 79 Fed. Supp. 516; U. S. v. U. S. Brewers Association, 239 Fed. 163; State v. Pioneer Press Co. (Minn.), 110 N. W. 867; Solomon v. City of Cleveland (Ohio), 159 N. E. 121; People v. Winters, 48 N. Y. Supp. 2d 230; State v. McKee (Conn.), 46 Atl. 409; State v. Van Wye (Mo.), 37 S. W. 938; In Re Banks (Kans.), 42 Pac. 693.

Statutes and ordinances regulating the operation on city streets of sound trucks have been uniformly upheld. Our own case of State ex rel. Nichols v. Headley (Fla.), 48 So. 2d 80, is among the cases holding that such an exercise was in the province of the legislature under the police power.

In Florida, a statute prohibiting publication or circulation of charges against a candidate for nomination without serving a copy thereof on him at least 18 days before a primary election was held not unconstitutional as abridging liberty of speech and press or because of indefiniteness amounting to a deprivation of liberty without due process of law. Ex parte Hawthorne (Fla.), 156 So. 619, 96 A. L. R. 572. In this connection see: Anderson v. State (Neb.), 96 N. W. 149; City of Milwaukee v. Kassen (Wis.), 234 N. W. 352; Stephens v. Stickel (Fla.), 200 So. 396.

The courts have almost unanimously upheld laws making it unlawful to distribute handbills, dodgers or circulars in public

streets and laws prohibiting meetings in streets without a permit or the making of speeches in public parks — in decisions too numerous to mention the courts have held such statutes do not abridge the right of free speech.

The basic rule sets up tests of the validity of the exercise of police power — as to whether it is directed toward an appropriate end — and as a reasonable means to that end.

For the reasons stated above, I cannot see where the proponents of the effort to invalidate this legislative act have met the burden which the courts put upon the proponents of any effort to strike down an act of the legislature. On the other hand, it seems to me that this act is entirely constitutional and valid.

Therefore, this cause coming on to be heard on the plaintiff's bill of complaint, the defendants' answer and a motion for judgment on the pleadings joined in by plaintiff and defendants, and the arguments of counsel for the parties and the briefs filed having been considered by the court, it is therefore ordered, adjudged and decreed that:

A. This court has jurisdiction by declaratory decree to settle the questions of law raised by the bill of complaint and to declare plaintiff's rights thereunder, and, accordingly, defendants' motion to dismiss contained in their answer is hereby denied.

B. The joint motion for judgment on the pleadings is granted.

C. Subsections (4) (a) and (7) of section 99.161, Florida statutes, are valid exercises of the police power of the state and do not contravene section 13 of the Declaration of Rights in the Florida constitution.

D. The specific questions on which plaintiff, by his bill of complaint, seeks adjudication are answered as follows:

1. Plaintiff, as owner of a duly licensed and operating radio station in Florida may not accept money or checks (as those words are commonly intended and understood) in payment of political advertising in furtherance of the candidacy of a candidate for political office in the state of Florida unless authorized by the campaign treasurer of such candidate as pre-

scribed in subsection (7) of section 99.161, Florida statutes. However, this authorization need only be in the form of a letter or memorandum, signed by said treasurer, authorizing the contributor to make such expenditure, and accepting the advertisement as a contribution of a thing of value, to be recorded and reported as such.

2. An individual citizen of Florida may purchase time on a radio station in which to voice his views in furtherance of the candidacy of an individual, if he has first obtained authorization from the campaign treasurer of the candidate in the manner discussed under question 1 above.

3. The owner or operator of a radio station if not otherwise prohibited may give time on the air to a candidate for public office or other citizen to express his views in the furtherance of a candidacy, provided such advertising time is given as a contribution of a thing of value to the candidate, and recorded and reported as such. In any such case in which a gift of time on the radio is made, in order to comply with the intent of section 99.161 (4) (a), the owner of the station must make the gift through the treasurer of the candidate who is to be benefited by the use of the time and be listed as a contributor of radio time in the amount of the value of such time.

4. Plaintiff, as a citizen, may freely voice his views advocating the candidacy of a candidate for public office on a radio station other than his own, provided that he has first obtained authorization from the campaign treasurer to make such a contribution and that the value of the time is reported and recorded as a contribution to such campaign.

5. Plaintiff, as owner and operator of a radio station may produce on such radio station the opinions and views of non-residents of Florida as they apply to nominees of major national political parties who have not appointed a campaign treasurer in Florida, since section 99.161 is concerned only with those contributions and expenditures which further the candidacy of a candidate for nomination or election to political office in Florida. Nominees of major national political parties are not candidates for political office in Florida within the purview of this law.